FRED. H. MEAD, Individually and as Administrator, etc., Respondent, *v.* WILBER B. MABEN et al., Individually and as Executors, etc., Appellants.

The rule that where a testamentary gift is to one or more persons, and in case of the death of any of them without issue to the survivors, the death referred to is one in the life-time of the testator, and that any one of said persons surviving the testator takes absolutely, applies only where the context of the will contains nothing showing a contrary intent. Where the scheme of the will and the context show the testator intended a death occurring at any time, this must prevail.

The will of M. gave his residuary estate to his executors, with power to sell the realty in their discretion, to make division into seven equal parts, one of which was given to each of his seven children, and until a sale of the realty, the income to be paid over to them in the same proportions. After providing for the disposition of "the share or interest remaining" of one child in case she died intestate, the will provided that in case any other child "shall die without leaving surviving child or children or heirs of the body, then" the share of the one so dying shall go equally to the other children. A., a daughter of the testator, died childless after his death. *Held,* that the death referred to in the will was not a death in the life-time of the testator, but one occurring at any time; that the purpose of the testator was to prevent a sharing in his estate by others than his children and their issue; that while each child took a vested interest in a seventh part of the estate upon the testator's death, it was not absolute, and upon the death of A., without issue, her share went to the testator's surviving children.

*Mead* v. *Maben* (60 Hun, 268), reversed.

(Argued January 27, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 21, 1891, which reversed a judgment entered upon a decree of the surrogate of the county of Greene, settling the accounts of the petitioners as executors.

This was a proceeding for the judicial settlement of the accounts of the executors of the last will and testament of Buel Maben, deceased.

The material portions of the will of said testator and the facts are stated in the opinion.

*Emory A. Chase* for appellants. The testator had a legal right to devise and bequeath to his executors and trustees his property, real and personal, to be disposed of by them among his children, so that his children would each take a fee in one-seventh, subject to a remainder over, if either of them should die without children or heirs of the body, either before or after his (testator's) death. (*Greystone* v. *Clark*, 41 Hun, 1; *Spencer* v. *Strait*, 38 id. 228; *In re Cager*, 111 N. Y. 343; *Crozier* v. *Bray*, 120 id. 366; *Smith* v. *Van Ostrand*, 64 id. 278.) In the construction of wills it is the duty of courts to carry into effect the intent of the testator if it is consistent with law. (*Roe* v. *Vingut*, 117 N. Y. 212; *Phillips* v. *Davies*, 92 id. 199; *Taggart* v. *Murray*, 53 id. 233; 1 Redfield on Wills, 435; *Wager* v. *Wager*, 96 N. Y. 167, 168; *Kelso* v. *Lorillard*, 85 id. 181; *Hoppock* v. *Tucker*, 59 id. 208; *Stimpson* v. *Vrooman*, 99 id. 79; *Spofford* v. *Pearsall*, 56 Hun, 148.) The testator intended by his will to keep his property in his family and among those of his own blood. He intended that in any event the death of a child, either before or after his death, without leaving a child or heirs of the body, should result in the property being divided among his other children, and that it should not on any contingency that he could provide against, go to a stranger to him as is claimed by appellant. (60 Hun, 278.) The natural meaning of the words used in the eighth item would include a death either before or after testator. (*Crozier* v. *Bray*, 120 N. Y. 375; *Anderson* v. *Jackson*, 16 Johns. 382; *Sherman* v. *Sherman*, 3 Barb. 385; *Tyson* v. *Blake*, 22 N. Y. 558; *Buel* v. *Southwick*, 70 id. 581; *Nellis* v. *Nellis*, 99 id. 505; *Vanderzee* v. *Slingerland*, 103 id. 47; *In re N. Y., L. & W. R. R. Co.*, 105 id. 89; *Fowler* v. *Ingersoll*, 127 id. 478; *Britton* v. *Thornton*, 112 U. S. 526.)

*E. Countryman* for respondent. The general rule is firmly established in the case of a devise or bequest to one or more persons absolutely, and in the event of the death of any of them without issue, then of such share over to the survivors,

that the words of contingency refer to a death in the life-time of the testator. And it is indispensable, in order to take a particular case out of the rule, to show affirmatively from the context that the alternative provision was really intended to apply to a death after that of the testator. ( *Vanderzee* v. *Slingerland,* 103 N. Y. 47, 55 ; *Austin* v. *Oakes,* 117 id. 578, 595 ; *Quackenboss* v. *Kingsland,* 102 id. 128 ; *Kelley* v. *Kelly,* 5 Lans. 443, 444–446, 447–449 ; 61 N. Y. 47, 50, 51 ; *McLaughlin* v. *Maher,* 17 Hun, 215 ; *Gibson* v. *Walker,* 20 N. Y. 476, 483 ; *Livingston* v. *Green,* 52 id. 124 ; *Embury* v. *Sheldon,* 68 id. 233 ; *Converse* v. *Kellogg,* 7 Barb. ;590·; *Goodall* v. *McLean,* 3 Bradf. 309 ; *Moore* v. *Lyons,* 25 Wend. 127, 128 ; *O'Brien* v. *Hervey,* 2 Edw. Ch. 249 ; *Crossman* v. *Fields,* 119 Mass. 170, 172 ; *Abbott* v. *Bradstreet,* 3 Allen, 589 ; *Waug's Appeal,* 78 Penn. St. 436 ; *Stone* v. *Nicholson,* 27 Gratt. 17, 18 ; *Snell* v. *Davis,* 23 Grant's Ch. 132 ; *Kerr* v. *Bryan,* 32 Hun, 51 ; *In re Mahan,* 32 id. 73.) There is no evidence disclosed in the context of a special intention on the part of the testator in the use of the words contained in the eighth paragraph, relating to survivorship, to refer to a death after his own. ( *Vanderzee* v. *Slingerland,* 103 N. Y. 47.)

GRAY, J. Upon the accounting of these executors the question arose as to the distribution of the share in the testator's estate, which was given by his will to a daughter, since deceased. It is claimed on the one hand by her administrator and on the other by the other children of the testator. This daughter, in dying, left her surviving a husband, but no issue. Turning to the testator's will for a determination of this question, we find, in the first three clauses, that he made certain unimportant bequests. In the fourth clause he gave the rest of his property to his executors, to be disposed of as thereinafter provided. The fifth clause gave them a discretionary power of sale as to the realty, and directed them to make a division of the whole estate into seven equal parts. To each one of his seven children was given one of such parts, and, until the sale of the realty, its income was to be paid over to

them in the same proportions. Then follow clauses, which are quoted in their entirety:

"*Sixth.* If my said daughter Diademia shall die without leaving her will, all the share and interest remaining hereby given to her shall be equally divided among my other children.

"*Seventh.* If my son Jonathan shall die without having left his will, then I direct my executors, if they shall deem it proper and expedient, that they may give to any child or children of my son Jonathan the whole or any part of the share remaining herein given him; otherwise such remaining share or interest shall be equally divided between my other children.

"*Eighth.* If any of my children except Diademia shall die without leaving surviving child or children or heirs of the body, then the share or portion of my estate so given to such deceased child shall go equally to my other children, but in the manner and subject to the like limitations as the specific bequests to each of them as has been hereinbefore provided and given."

The seven children survived their father, who died within a few days of the execution of his will. Of his children but two were unmarried; namely, Diademia, who was forty years old and is referred to in the sixth clause, and Abigail, who subsequently married, and died childless. It is her husband who now claims that she took an absolute interest in her father's estate, which was not divested by her death without issue.

The justices of the General Term below, upon whose concurrence in opinion a decision by the surrogate adverse to the claim of Abigail's administrator was reversed, deemed themselves bound by the rule that where a testamentary gift is simply to one or more persons, and in case of the death of any one of them, without issue, to survivors, the death referred to means a death in the life-time of the testator and the prior legatee surviving the testator takes absolutely. (2 Jarm. on Wills, 752.) They concede that if there was any provision, which would qualify the effect of that general rule upon such language in a testamentary gift, it should be considered and

an apparent contrary intention should be sustained. But, as they regarded the testamentary provisions, there was nothing to prevent the application of that general rule of construction, and, hence, they held that the death, referred to in the eighth clause, was one which should occur in the testator's life-time, and that, as Abigail survived, she took an indefeasible estate.

We think the appeal should prevail, and that there are sufficient indications in this will of the testator's intending the death of his children, under the eighth clause, to be a death occurring at any time. The eighth clause of this will is not substitutionary merely. The scheme of the will and the context seem to indicate, strongly, a distinct purpose to prevent a sharing in the testator's estate by others than his children, or their issue. In all the authorities, which are referred to upon the subject of the application of the general rule above referred to, the courts, as indeed does Mr. Jarman, upon the authority of whom the courts have more or less relied, assume that the context of the will is silent, and that the instrument contains nothing indicating an intention which interferes with the application of this rule. (*Vanderzee* v. *Slingerland*, 103 N. Y. 47.) The rule must yield if, upon consulting the other provisions of a will, we can find a warrant for importing into the language used by the testator the natural and an ordinary significance. It cannot be denied that the ordinary import of the words " if any of my children shall die " is that of a death of any of them at any time, and there are evidences in this will that not only such was the probable intention of the testator, but that to give a different construction to the language would be to thwart an apparent and a natural purpose of keeping his estate from the possession of strangers in blood.

There was effected, under the directions in the fifth clause of this will, an equitable conversion of the realty into personalty, as of the time of testator's death. That it was intended that each child should take his or her share as of that time seems evident from the gift of the income, arising intermediate the time of the testator's death and the sale by the executor of the realty. While, however, each child took a vested

interest in the seventh part of the estate upon the testator's death, subsequent clauses of the will annexed conditions to their ownership ; which provided for the distribution of the shares so given, either, as in the cases of Diademia and of Jonathan, should they die intestate ; or, as in the cases of the other children, and including Jonathan, too, should they die without leaving surviving issue.

It is in the consideration of these clauses that we find the circumstances, which compel us to give to the testator's words in the eighth clause the broader meaning of a provision for the case of a death of a child at any time.

In the sixth clause, when he provides that if " Diademia shall die without leaving her will," all her share and interest remaining shall be equally divided among my other children, he obviously contemplates her death after him.   Her right to will and the direction to divide the " share or interest remaining," sufficiently indicate that understanding.   So when, in the seventh clause, he provides that if " Jonathan shall die without having left his will," the executors have the discretionary power to give " the whole or any part of the share remaining " to any of his children ; or " otherwise " are to divide " such remaining share " equally among testator's other children, it is a clear indication of a testamentary purpose to be effectuated in the case of Jonathan's death intestate after the testator.   When then, in the eighth clause, we find the provision that " if any of my children, except Diademia, shall die " without issue, the share so given to such deceased child shall go equally to my other children, the testator must be deemed to have used the words " shall die " in the same association of ideas as he had just previously used them ; namely, of the child's death after him and while in the possession of his or her share ; and with the intention of providing for the event of a child dying without leaving children to take the share.   This idea is enforced by the exception of Diademia from the operation of the testamentary direction in this clause.   In her case, a woman forty years of age and unmarried, she was given the right to dispose by will of her share ; a right and favor greater than

were conferred upon the other children; for even Jonathan was not excepted in the eighth clause. In the seventh clause, which related to him, his right to will the share was only in the event of his leaving issue. The eighth clause placed him in the same category with the children, other than Diademia, in the event of his leaving no issue him surviving. The words "shall die," in this eighth clause, should be read, not only in connection with an association of ideas, dominant at the time, by natural sequence, in the testator's mind, but as well in the light of an evident and contemplated purpose to prevent at any time, by reason of the death of a child, before as well as after testator, the passing of his property into any hands, save those of a child, or of descendants; except in the one peculiar case of the daughter Diademia, who was permitted to will away the share which came to her, and whose marriage and possibility of issue were not considered. That this eighth clause covers the case of a death either before or after the testator's seems plain, too, because it makes the gift over, if a child shall die without issue, "in the manner and subject to the like limitations as the specific bequests to each of them as has been hereinbefore provided and given." The expression may, perhaps, not be very happy; but, nevertheless, of necessity, it must have a reference to a disposition by the testator upon, or at the time of, his death; as to the nature of the interest which should vest in each child and be held by him, or her, after his death, and until he, or she, shall die.

We agree with the learned justice, who dissented at the General Term, in thinking that, in this case, the intention of the testator is better carried into effect by following the literal meaning of the language of his eighth clause rather than artificial rules of construction. Where the testator's intention is concealed and context is silent and circumstances are wanting to aid us, the application of such a general rule is proper enough and safe; but, where the courts can make out the testator's probable intention, and it can be carried into effect without violating any rule of law or statute, no general rule may rise above it.

The judgment of the General Term should be reversed and the decree of the surrogate should be affirmed, with costs.

All concur.

Judgment reversed.