ANDREW G. WASHBON AND ANOTHER, APPELLANTS, *v.*
NANCY COPE AND OTHERS, RESPONDENTS.

*Will — bequest with remainder over on the death of the first taker without children —
construed, as relating to a death, after as well as before the death of the testator.*

A will, among other provisions, contained a bequest to the testator's daughter
Nancy of $10,000, and by a subsequent clause bequeathed and devised the
residue of the testator's property, real and personal, to his children, Robert,
Nancy and Henry, to be divided equally between them; the next clause being
as follows: " I furthermore desire and direct that in the event of my daughter,
Nancy Cope, wife of John Cope, Jr., shall die without children, the portion
herein given to her shall be given to my sons, John G., Robert and Henry R.,
or their heirs, share and share alike."

The daughter Nancy, who survived the testator, had been married some ten years
before the execution of the will, and was, at the time of its execution, and con-
tinued to be, childless.

In an action brought by certain of the heirs-at-law and next of kin of the testator
to compel the daughter Nancy to give security for the legacies received by her,
on the theory that upon her death without children the principal of the legacies
to her would belong to the plaintiffs:

*Held,* that it appeared from the whole context of the will, and the circumstances
surrounding the testator, that the words of contingency, in the event my
daughter " shall die without children," did not refer only to death within the
lifetime of the testator, but referred to the death of the daughter after as well
as before the death of the testator; that, consequently, in case she died child-
less her interest in the legacy was only the use thereof for her life, and that,
therefore, the plaintiffs were entitled to the relief asked for. (MERWIN, J.,
dissenting.)

APPEAL by the plaintiffs, Andrew G. Washbon and Anne W.
Lee, from a judgment of the Supreme Court, entered in the office
of the clerk of Otsego county on the 12th day of October, 1891,
upon a decision rendered at the Otsego Special Term dismissing the
complaint, with costs.

The action was brought by Andrew G. Washbon and Anne W.
Lee, sole heirs-at-law and next of kin of John G. Washbon, deceased,
who was a son of Andrew G. Washbon, deceased, to compel the
defendant, Nancy Cope, a daughter of said Andrew G. Washbon,
deceased, to give security for the ultimate disposition of certain
legacies received by her under the will of her father, or that a trus-
tee be appointed; upon the theory that upon the death of Nancy

Cope without children the principal of the legacies will belong to other parties, two of whom are the plaintiffs and the others are parties defendant.

The action was commenced in May, 1890. Before that date, and on July 26, 1889, the surrogate of Otsego county had made a decree upon the judicial settlement of the accounts of Robert Washbon and John Cope, Jr., as surviving executors of the last will and testament of Andrew G. Washbon, late of the town of Morris, in said county, deceased, which decree adjudged, among other things, as follows: "It is further ordered, adjudged and decreed, that the bequests to Nancy Cope by the fourth and· seventh clauses of the will are not absolute, but her interest therein is reduced to a life estate by the eighth clause of the will in the event of her dying without children, and that that contingency relates to her death without children after as well as before the death of the testator, and that said Nancy Cope is entitled to a life use only of the bequests to her in case she shall die without children."

Andrew G. Washbon died March 1, 1867, leaving a last will and testament bearing date the 31st day of January, 1865. He was in his seventy-seventh year when the will was executed. The first clause of the will provided an annuity for his wife. The second clause devised a farm in trust for his son, John G., with the remainder over to the descendants of John "who shall be living at his decase, to whom I devise and bequeath the same so that the descendants of each deceased child, if any, of my said son, John G. Washbon, shall take together and *per stirpes*, one share as said deceased child, their parents would have taken if living, and for the benefit of said descendants of said son, John G. Washbon." The third clause devised a farm to his son, Henry R., containing 188 acres. The fourth provision was as follows: "I give and bequeath to my daughter, Nancy Cope, wife of John Cope, Jr., the sum of ten thousand ($10,000) dollars." The fifth clause gave a legacy of $2,000 to John Cope, Jr., husband of Nancy. The sixth clause contained a bequest to his second son, Robert, of $12,000. The seventh clause was as follows: "I give and bequeath and devise all rest, residue and remainder of my property, real and personal, to my three children, Robert Washbon, Nancy Cope, wife of John

Cope, Jr., and Henry R. Washbon, to be divided equally between them." "Eighthly. *I furthermore* desire and direct that in the event of my daughter, Nancy Cope, wife of John Cope, Jr., shall die without children, the portion herein given to her shall be given to my sons John G., Robert and Henry R., or their heirs, share and share alike." In the ninth clause there was a provision for his sister and the tenth clause was as follows: "I furthermore direct and authorize my executors hereinafter named, to sell all real estate which I may have, except such as I have otherwise given and devised in this my last will and testament for the benefit of my heirs, at such times as said executors shall deem best." "Eleventhly. I do hereby nominate and appoint my sons Robert Washbon and Henry R. Washbon and my son-in-law John Cope, Jr., to be the executors of this my last will and testament, hereby revoking all former wills by me made."

The Special Term held that the surrogate's decree was not binding upon Nancy Cope; and, secondly, that she took under the provisions of her father's will absolutely under the provisions made in her behalf.

*Carver, Deyo & Jenkins,* for the appellants.

*Burr Mattice,* for the respondents.

HARDIN, P. J.:

(1.) If Nancy Cope only took a life estate or was " entitled to the use of the legacy during her life and nothing more," then this action was properly brought and the plaintiffs were entitled to some relief. (*Tyson* v. *Blake*, 22 N. Y., 558; *Livingston* v. *Murray*, 68 id., 485.) Plaintiffs alleged and sought to establish by evidence that their interests would be imperiled without some security required, and to bring their case within the qualified rule stated in *Graham* v. *New York Life Insurance and Trust Company* (46 Hun, 267), and *Matter of Fernbacher* (17 Abb. N. C., 339).

(2.) When the will was made Nancy Cope was about forty-four years of age, having been married ten years, and was then and still is childless. It is suggested " the words of contingency refer only to a death in the lifetime of a testator." In the tenth clause of the will the testator directs and authorizes his executors " to sell all

real estate" which he had, except such as he had " given and devised
\* \* \* for the benefit of my (his) heirs at such times as said
executors shall deem best;" and in the eighth clause he provides as
follows: "I furthermore desire and direct that in the event of my
daughter, Nancy Cope, wife of John Cope, Jr., shall die without
children, the portion herein given to her shall be given to my sons,
John G., Robert and Henry R., or their heirs, share and share
alike." The language used indicates an intent on the part of the
testator that the portion given to her, in the event she shall die
without children, "shall be given" either to his sons John G.,
Robert and Henry R. "or their heirs, share and share alike;"
thus a provision is made for the giving of her share upon her death
without children to his sons John, Robert and Henry, and, not
being content to provide for their reception of it only, he provides
still further for the portion being given "to their heirs, share and
share alike," using words apt to control the estate at a time so far
in the future as might be subsequent to the death of John G.,
Robert and Henry R., or either of them. Considering the language
just referred to, as well as the facts and circumstances surrounding
the testator at the time of his execution of the will and the whole
language of the instrument, and observing the rule "that all the
parts of an instrument are to be taken together in ascertaining its
meaning and that no part of it should be rejected as inoperative
if the whole can reasonably stand together" (*Norris* v. *Beyea*, 13
N. Y., 283), the conclusion is reached that it was the intention of
the testator to provide that the portion of his estate given to Nancy,
in the event of her death without issue, should pass to those of the
blood of the testator. And that the "words of contingency" used
by the testator do not refer to a death in the lifetime of the testator.
(*Executors of Moffat* v. *Strong*, 10 Johns., 12 ; *Greyston* v. *Clark*,
41 Hun, 125; *Nellis* v. *Nellis*, 99 N. Y., 513 ; *Vanderzee* v.
*Slingerland*, 103 id., 56; *Buel* v. *Southwick*, 70 id., 581; *Britton*
v. *Thornton*, 112 U. S., 526, and the opinion of LEARNED, P. J., in
*Mead* v. *Maben*, 60 Hun, 268; S. C., on appeal to Ct. of Appeals,
131 N. Y., 255.)

In speaking of the rule referring to death without issue to a time
prior to the death of a testator, ANDREWS, J., in *Vanderzee* v.
*Slingerland* (*supra*), says: "But the rule established by the courts

applies only where the context of the will is silent, and affords no indication of intention other than that disclosed by words of absolute gift, followed by a gift over in case of death, or of death without issue or other specific event. Indeed, the tendency is to lay hold of slight circumstances of the will to vary the construction and to give effect to the language according to its natural import." See, also, his opinion in *Soper* v. *Brown* (32 N. E. Rep., 768).

In *Mullarky* v. *Sullivan* (49 State Rep., 333), O'BRIEN, J., in giving construction to a will, says : " It is perfectly true that in determining what the testator meant, every part of the will must be considered, and that the natural and ordinary meaning of the words of a particular clause may be modified by other provisions."

( 3.) As the foregoing views, if adopted, would lead to a reversal, it is not important to consider the effect of the surrogate's decree declaring a construction of the will in accordance with the views already expressed.

There should be a reversal and a new trial.

MARTIN, J., concurred.

MERWIN, J. (dissenting):

Andrew G. Washbon died March 1, 1867, leaving a will dated January 31, 1865. In the first clause of this will he made provision for his wife in lieu of dower. In the second clause he gave and bequeathed to his executors thereinafter named, a certain farm of about 250 acres, upon which his son, John G. Washbon, then resided, together with the farming utensils and live stock thereon belonging to him at the time of his decease, " and also the sum of four thousand (4,000) dollars, and also the equal one-fourth part of the residue of my estate as hereinafter mentioned, and also any other's share or interest which may be hereinafter devised or given to them as trustees in trust to receive the income, rents, interests and profits thereof, and to apply the same to the use of my said son, John G. Washbon, during his life, and at his decease to grant, convey, transfer and pay over the same to the descendants of my said son, John G. Washbon, who shall be living at his decease," and he provided that if any deceased child of John left descendants, they should take the share their parent would have taken if living. Then came the following clauses :

" *Thirdly.* I give and devise to my youngest son, Henry R. Washbon, the farm in the town of Morris aforesaid, on which I now live, containing one hundred and eighty-eight (188) acres, more or less, with all the farming utensils and live stock thereon belonging to me at the time of my decease.

" *Fourthly.* I give and bequeath to my daughter, Nancy Cope, wife of John Cope, Jr., the sum of ten thousand (10,000) dollars.

" *Fifthly.* I give and bequeath to my son-in-law, John Cope, Jr., the sum of two thousand (2,000) dollars.

" *Sixthly.* I give and bequeath to my second son, Robert Washbon, the sum of twelve thousand (12,000) dollars

" *Seventhly.* I give and bequeath and devise all rest, residue and remainder of my property, real and personal, to my three children, Robert Washbon, Nancy Cope, wife of John Cope, Jr., and Henry R. Washbon, to be divided equally between them.

" *Eightly.* I furthermore desire and direct, that in the event of my daughter, Nancy Cope, wife of John Cope, Jr., shall die without children, the portion herein given to her shall be given to my sons, John G., Robert and Henry R., or their heirs, share and share alike."

In the ninth clause, he made provision for a home and residence for his sister on the farm he had devised for the benefit of his son John. In the tenth clause he authorized and directed his executors to sell, at such times as they deemed best, all his real estate, except such as he had otherwise devised, and lastly, he appointed as his executors his sons Robert and Henry, and his son-in-law, John Cope, Jr.

His four children named in the will were his sole heirs and next of kin. The testator at the date of the will was in his seventy-seventh year, and his daughter, Nancy, was then about forty-one years old and had been married about eight years. She has never had any children. The will was proved and letters issued to the executors on the 12th of March, 1867. During the years 1867 and 1868 the executors paid to Nancy Cope in full the amount of the legacies bequeathed to her by the terms of the will, which amounted to the sum of about $13,500, and she has ever since that time had the absolute possession and control of the same, and has always claimed full title under the will. The legacies to Robert Washbon and to Henry R. Washbon were also paid wholly or to a large extent about

the same time. Henry R. died about the 1st of April, 1884, leaving children who are parties defendant. On the 9th of March, 1890, John G. Washbon died leaving as his only heirs-at-law and next of kin the plaintiffs herein.

On the 23d of November, 1887, the plaintiffs filed in the Surrogate's Court a petition asking that the executors be required to file an inventory of the estate and an intermediate account of their proceedings as executors and trustees. Thereupon a citation was issued to the executors returnable on 16th of December, 1887. Thereafter the executors filed an inventory and an account of their proceedings. Objections thereto were filed by the petitioners and evidence was taken before the surrogate and a referee, and the matter was adjourned from time to time to the 20th of September, 1888, when the executors applied for a judicial settlement of their accounts. A citation was issued in the usual form returnable on 30th of October, 1888. In this citation Nancy Cope was named as one of the parties in interest. A hearing was had on December 4, 1888, and by consent of parties who appeared the accounts, objections and evidence taken and filed in the prior proceeding were admitted in the latter as if originally taken and had therein. On the 26th of July, 1889, a decree was made by the surrogate which, among other things, adjudged that the bequests to Nancy Cope by the fourth and seventh clauses of the will are not absolute, but her interest is reduced to a life estate by the eighth clause in the event of her dying without children, and that this contingency relates to her death without children after as well as before the death of the testator.

The decree recited that the citation was returned with proof of service on the parties therein named, which would include Nancy Cope. The proof of service as filed does not show service on her. Upon the hearing on December fourth the attorney for the executors in the proceedings caused to be entered upon the record that Nancy Cope appeared in such proceedings by him as her attorney, and he thereafter acted therein as her attorney. It is, however, found by the Special Term upon sufficient evidence that the citation was not, in fact, served upon her, and that the appearance by the attorney was without any authority from her and without her knowledge, and that she never employed him to appear or act for her and did not know that he assumed to do so.

The present action was commenced in May, 1890, and the question is whether Nancy Cope had an absolute title to the legacies which she has received. This depends upon whether the death without children, referred to in the eighth clause of the will, means only a death before the testator. If it does, then the title of Mrs. Cope is absolute. If it does not, then her title is defeasible, and the plaintiffs, it may be assumed, would be entitled to some relief. The plaintiffs, in support of their position, claim (1) that the decree of the Surrogate's Court is a binding adjudication upon the subject, and, if not (2), then that the will should, in fact, be so construed.

It was held at the Special Term that the decree of the Surrogate's Court did not bind Mrs. Cope, mainly on the ground that she was not bound by the appearance of the attorney, and that, therefore, the surrogate had no jurisdiction of her person, and that the will should be construed to refer only to a death before the testator.

The fund in controversy here was received by Mrs. Cope in 1867 and 1868. The undisputed finding of the court is that the amount she then received was in full of the legacies bequeathed to her by the terms of the will. That being so, she had no interest, in fact, in the accounting in 1888, as the surrogate had no power to compel her to pay back in case she had received more than she was entitled to. (*Matter of Underhill*, 117 N. Y., 471.) She was entitled to nothing farther under the decree and claimed nothing. There was, therefore, no fund then in the hands of the executors, so far as Mrs. Cope or her legacies were concerned, upon the status of which the Surrogate's Court was called upon to pass, or in regard to which there was any occasion to construe the clause in question. The only parties who made objections to the executors' accounts were the plaintiffs, and in these objections no reference was made to the legacies in question, although, presumptively, the payments thereof entered into the accounts as filed. Indeed, upon the trial before the surrogate no question seems to have been raised on the subject until the submission of the briefs of counsel upon the final argument. No brief was then submitted upon the part of Mrs. Cope, but on behalf of the executors upon one side and the plaintiffs upon the other. They were, in fact, the litigants. There was no issue between the plaintiffs and Mrs. Cope The latter had held the legacies for twenty years and upwards and claimed absolute ownership. As the Surro-

gate's Court, under the rule of the Underhill case, had no jurisdiction to compel her to refund, it had none to qualify or limit her ownership. That was not a matter within the scope of the accounting, and any opinion or decision on the subject did not conclude Mrs. Cope. (*Hymes* v. *Estey*, 116 N. Y., 509.) It is, therefore, not important to consider whether Mrs. Cope was bound by the appearance for her by the attorney.

We then come to the question of how the will should be construed. In this State it is, I think, well settled that where there is a testamentary gift to one person absolutely and then a subsequent provision that in case of his death without children it shall go to other parties, the words of contingency refer only to a death in the lifetime of the testator, unless there is something in the context indicating a contrary intent. (*Quackenbos* v. *Kingsland*, 102 N. Y., 128; *Vanderzee* v. *Slingerland*, 103 id., 47; *Mead* v. *Maben*, 131 id., 255; *Black* v. *Williams*, 51 Hun, 280.) The reason given in some cases is that the absolute gift, which is in the first instance made, should not be cut down or limited by any subsequent doubtful expression, and that as the limit of death without children may refer to a death in the lifetime of the testator that should be the construction adopted in order to give full force to both provisions, unless a different intent appears elsewhere.

Does such an intent appear in this case? The construction claimed by the plaintiffs would, in effect, give to Mrs. Cope only a life estate. The testator provides, in terms, a life estate for one of his children with remainder over. His failure to so provide for Mrs. Cope does not, at least, aid the plaintiffs' view. Nor does the use in the second clause of the expression "also any other's share or interest which may be hereafter devised or given to them as trustees." No such interest was, in fact, given to the trustees, and, if the testator had then in mind the share of Mrs. Cope, his failure to follow up any idea he may then have had does not take away or affect the meaning which, presumptively, is to be given to his subsequent language. It is urged that on the theory of the defense the eighth clause was unnecessary, as the legacies to Mrs. Cope, in case of her death before the testator, would by law have passed to her brothers as intestate property. Assume this might be so, still the provision would prevent partial intestacy and

the law prefers a construction which will prevent partial intestacy to one which will permit it. (*Thomas* v. *Snyder*, 43 Hun, 15.) The same feature existed in the Quackenbos case and does not seem to have been considered of any special importance. In that case, too, as here, there was one or more life estates provided for and the failure to provide such for the share in controversy was held to support the interpretation that the first taker, having survived the testator, took the absolute title.

I fail to find anything in the present case to overcome the presumed intent.

It follows that the decision of the Special Term is correct and should be affirmed.

Judgment reversed and a new trial ordered, with costs to abide the event.