FRANK S. BENSON and Others, Respondents, *v.* AUSTIN CORBIN and Others, Appellants.

*A devise to one in fee and in case of his death to another, refers to a death during the testator's lifetime — when an estate in fee created by will, will not be reduced by a subsequent clause.* •

Where there is a devise to one person in fee and in case of his death to another, the contingency referred to is a death during the lifetime of the testator, unless there is some language in the will indicating a different intention.

An estate in fee created by a will will not be cut down or limited by a subsequent clause, unless the intent to so reduce it is as clear and satisfactory as the words used in giving the estate, and such result will not be declared where there exists a doubt as to the meaning of the subsequent clause.

APPEAL by the defendants, Austin Corbin and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Westchester on the 23d day of December, 1893, upon the decision of the court rendered after a trial at the Westchester Special Term.

*E. B. Hinsdale,* for the appellants Corbin and Pratt.

*Davies, Short & Townsend,* for the appellant missionary society.

*Daly, Hoyt & Mason,* for the respondents.

BROWN, P. J.:

This action was brought to compel the defendants Corbin and Pratt to specifically perform a contract by which they agreed to purchase from the plaintiffs real estate situated on the eastern end of Long Island.

The defendants refused to accept the deed tendered to them by the plaintiffs, upon the ground that they could not convey a marketable title to the land in question, for the reason that the Domestic and Foreign Missionary Society of the Protestant Episcopal Church had a contingent estate therein.

The plaintiffs are the widow and only son and daughter of Arthur W. Benson, who died in December, 1889, leaving a last will and testament, the ninth and tenth paragraphs of which are as follows :

" *Ninth.* I give, devise and bequeath to my son, Frank Sherman Benson, and my daughter, Mary Benson, share and share alike, my house in Brooklyn, 214 Columbia Heights, and my house at Montauk, and all the contents of both, subject to the life occupancy of their mother; and also all my land in Easthampton, Amagansett, Napeag and Montauk, and any and all my other lands, wherever situated, subject to the dower right of their mother.

" *Tenth.* It is my will that in case of the death of both of my children, leaving no issue, that all my property given and devised to such children and their issue, shall not pass to the branches of my family or the family of my wife, but that all of it, personal or real, which I have the power to will, and also the trust fund heretofore set apart for income to my wife, is hereby given, devised and bequeathed to the Domestic and Foreign Missionary Society of the

Protestant Episcopal Church for the use of the society, to be expended for the current expenses within ten years."

The question presented is the oft-recurring one, whether the event which gives effect to the devise over is the death of the primary devisee in the lifetime of the testator, or whenever that event happens. If the former is the true meaning, the gift over to the missionary society was substitutionary merely, designed to prevent a lapse, and the children, upon the death of the testator, took an absolute fee. (*Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Mead* v. *Maben*, 131 id. 259.)

The defendants do not question the general rule that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is a death during the lifetime of the testator; and that this rule is uniformly applied in the construction of wills, unless there is some language in the instrument indicating a different intention.

But they contend that the intention of the testator, indicated by the will, was that the devise to the missionary society should take effect upon the death of the children without issue, whenever that event occurred.

This view cannot, in my opinion, be sustained. Little importance can be attached to the expression in the tenth clause, that it is the testator's will that his property should not pass to the branches of his family, meaning thereby collateral heirs. Such would be the result of the death of his children, intestate, without issue, after his own decease; but such also would have been the result of his own intestacy in case he left no children or issue of children surviving him.

By the third paragraph of the will the testator's house in Brooklyn, and his house at Montauk, were devised to his wife for life, and in case of the sale of either or both, with her consent, the income of the proceeds was to be paid to her. Clearly, he contemplated that it might be desirable to sell these properties, and as the will gives no power of sale, the only way that disposition could be made would be by a deed from his children and widow. The children were to have the fee subject to the wife's life estate, and in this provision we have an indication that the phrase under consideration was intended to refer to a death in his own lifetime.

By the fifth paragraph one-third of the personal estate was given absolutely to his wife, and by the sixth paragraph one-sixth absolutely to his son.

By the seventh and eighth paragraphs he created two trust estates in his personal property, the income from which was to be paid respectively to his son and daughter during their lives, and upon their death the principal to go to their surviving issue with cross remainders to the surviving issue of the other, in case either died without surviving issue, and in case of the death of both without issue surviving them, then the whole of the principal of said trusts was bequeathed to the missionary society.

In these trusts the intention of the testator is clear that the missionary society should take upon the death of the children without surviving issue, whenever that event happens, and no reason is apparent why this direction should be repeated in the tenth clause. Nor is any reason apparent why the testator should have made two separate provisions for his son, one absolute in form, and the other in trust, if he intended that the whole should go to the missionary society in the event of his death without issue. If such was his purpose, it is difficult to explain why he did not put all of the personal estate intended for his son in the trust. But the gift to the son is as absolute in terms as the gift of one-third of the personal estate to his wife.

Again, some light upon the testator's intention can be drawn from the character of the real estate in question. It consisted of about 10,000 acres of land at Montauk and in Easthampton. It is not suitable for farming purposes. It has been used chiefly for grazing, but the income derived from it is insufficient to meet the taxes and other expenses connected with its ownership. If it has any great value it is in its adaptability for the purpose of summer residences, and during his lifetime the testator had made some sales for that purpose. He must have known that it was burdensome to hold this land, and it is not probable that he intended to prevent the sale of any of this property during the lifetime of his children. Yet, as the will contains no power of sale, it would, under the construction contended for by the defendants, be impossible to convey any title to the land while both of his children were living. This result would impose a severe burden upon them with little chance of

profit. The inference and conclusion, drawn from the provisions of the will I have referred to, are all opposed to the defendants' contention, and nothing appears from a consideration of the whole instrument or the general scheme for the disposition of the testator's estate, to take the words used in the tenth clause out of the operation of the general rule which refers them to a death in the testator's lifetime.

In support of this view we may also invoke the rule that an estate in fee created by a will will not be cut down or limited by a subsequent clause, unless the intent to so reduce it is as clear and decisive as the words used in giving the estate. (*Roseboom* v. *Roseboom*, 81 N. Y. 356; *Byrnes* v. *Stilwell*, 103 id. 453.) Such a result will not be declared because of a doubt arising from the meaning of the subsequent clause.

We have in the sixth clause of the will before us an absolute gift of one-sixth of the personal estate to the son, and in the ninth clause an absolute devise of all the real estate to his son and daughter as tenants in common.

A doubt as to the intent of the testator in the use of the phrase "death leaving no issue," in the tenth clause, is not sufficient to cut down those absolute gifts.

In the reported cases where such a result has been worked, there has been in the clause giving the estate some reference to subsequent limitation thereon, or it has appeared from the scheme of the will that the testator did not intend an absolute gift. (*Nellis* v. *Nellis*, 99 N. Y. 505; *Vanderzee* v. *Slingerland*, 103 id. 47; *Buel* v. *Southwick*, 70 id. 581; *Mead* v. *Maben*, 131 id. 255.)

It cannot, therefore, be determined that the testator's intention was to give to his children a life estate only in his real estate; and the death referred to in the tenth clause must be held to refer to death in the testator's lifetime. The children took an absolute fee, and the title tendered to the defendants was good.

The judgment must be affirmed, with costs.

PRATT, J., concurred; DYKMAN, J., not sitting.

Judgment affirmed, with costs.