GEORGE H. NEWCOMB and Others, Respondents, *v.* AUGUSTA C. LUSH and Another, Appellants, Impleaded with Others.

*Conveyance purporting to be of a fee, executed by a life tenant — effect thereof — legal signification of the word " heir" — construction of a devise to one person in fee and on his death to another.*

If a tenant for life of real estate executes a deed purporting to convey the fee thereof, the grantee and all subsequent grantees take only the life estate of the grantor, which ceases upon the death of the life tenant, at which time the right of the remainderman to the property at once attaches, carrying with it the right of possession.

While under all circumstances a child must be regarded as an heir, it does not follow that if a person dies without children, or the descendants of children, he dies without heirs in the legal signification of the word.

Where there is a devise to one person in fee and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and if such first-named devisee survives the testator he takes an absolute fee.

The words of contingency do not create a remainder over, to take effect upon the death at any time of the first taker, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator.

HERRICK, J., dissenting.

APPEAL by the defendants, Augusta C. Lush and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Albany on the 26th day of July, 1894, upon the decision of the court rendered after a trial at the Albany Circuit before the court without a jury.

This action was brought for the recovery of the possession of certain real property which the plaintiffs alleged was unlawfully withheld from them by the defendants.

*A. V. De Witt* and *E. Countryman,* for the appellants.

*T. F. Hamilton,* for the respondents.

MAYHAM, P. J.:

The contention in this appeal arises out of the construction of the will and codicil of Daniel Newcomb, deceased.

On the 12th day of June, 1828, the testator made his will, in and by which he devised to his daughter Harriet Wells all his "real estate situated in the city of Albany and county of Albany, on Washington street;" the devise to this daughter also embraced other lands belonging to testator; and by the will testator also bequeathed to her certain personal property. The testator, in the other parts of his will, devised and bequeathed to various persons therein named what appears to be a large estate, consisting of both real and personal property, and in and by the will nominated and appointed three executors, of whom his son Thomas W. Newcomb was one.

The will also provides "that so much of the income of what I have given to my two sons Daniel Newcomb and Thomas Newcomb, as shall be necessary to pay all taxes that may be assessed on the two tracts of land I have given to my sons Charles and Pitt and to my

two daughters Sarah and Jane, and grandson George, shall be applied for that purpose until they shall severally become of age, meaning that the said Daniel and Thomas shall bear an equal proportion of said taxes."

On the 28th day of October, 1830, the testator made a codicil to his will, which codicil is as follows: " Whereas, I, Daniel Newcomb, of Pittstown, county of Rensselaer, and State of New York, have by my last will and testament in writing, bearing the date the twelfth day of June in the year of our Lord one thousand eight hundred and twenty-eight, given and bequeathed to my daughter Harriet Wells and to her heirs and assigns, all my real estate situated in the city of Albany and county of Albany, on Washington street; also lot No. 18 in the town of Plattsburg, and county Clinton, and also thirty shares of turnpike stock, it being in the State of New York;

" Now I, the said Daniel Newcomb, being desirous of altering my said will, in respect to the said legacies, do, therefore, make this writing, which I will and direct to be annexed as a codicil to my said will, and taken as part thereof, and I do hereby revoke the said legacies, by my said will given to Harriet Wells, and give and bequeath the said legacies to my said son Daniel T. Newcomb, his heirs and assigns, except, and it is my will, that my said son Daniel T. Newcomb pay to my said daughter Harriet Wells, annually, the sum of two hundred dollars in current money, and the yearly income of one-half of my Northern Turnpike stocks during her life, and that my said son Daniel T. Newcomb pay the heirs of Harriet Wells, if she leave any, who live to the age of twenty years, at her decease the sum of one thousand dollars.

" It is my will that all the legacies bequeathed to my son Daniel T. Newcomb in this writing, and the will to which this is a codicil, should go to his wife, Patience Newcomb, during her life, should she remain a widow after the death of her husband, and if my son Daniel T. Newcomb die without heirs, the said legacies after his widow are to go to the heirs of Thomas W. Newcomb.

" It is my will that such and all sums of money I may have at interest may be equally divided between my daughter Harriet Wells and my son Daniel T. Newcomb, and that in lieu of the three hundred dollars given to Lucina Woolman in the will to which this is a

codicil, that I give her twelve shares in the Stratton Turnpike, and at her decease to her daughters Sarah and Jane, to be divided equally between them."

After the death of the testator, and on the 26th day of April, 1832, the will was admitted to probate by the surrogate of Rensselaer county, and thereafter, on the 1st day of May, 1836, Daniel T. Newcomb and his wife, Patience Newcomb, executed and delivered to Henry G. Wheaton the lands in the city of Albany referred to in the will, and for which this action is brought, and the defendant Lush, through several mesne conveyances, has succeeded to the rights and interest therein conveyed to Wheaton by Daniel T. Newcomb and Patience Newcomb. Lush and the other defendants were in possession of the premises, claiming to hold through the Wheaton conveyance at the time of the commencement of this action.

Daniel T. Newcomb and Patience Newcomb, his wife, died before the commencement of this action, the former in 1870, the latter in 1891, leaving no children or descendants.

The principal question in controversy in this appeal is as to whether Daniel T. Newcomb took a fee in this Albany property, if he died without descendants, or whether in that event he took only a life estate for himself and wife, which terminated at the death of the survivor, by virtue of this will.

If he took a fee then the conveyance to Wheaton carried the same to him, and through the mesne conveyance to the defendant Lush.

If, on the contrary, he took only a life estate, then the conveyance to Wheaton and all subsequent grantees carried only the life estate, which ceased with the death of Patience Newcomb, at which time the right of the remainderman would at once attach, carrying with it the right of possession.

The wording of the will is inartificial and obscure, and in some respects the intention of the testator is not clearly expressed by the language employed in the instrument. It is quite apparent that the testator used indiscriminately the words "devise" and "bequeath" as referring alike to the disposition of real and personal estate, both in the will and codicil, and the same is true of the words "legacy" and "devise." When, therefore, the testator spoke of the revocation of the "legacies" to Harriet in the codicil, he evidently intended to embrace both the devises and bequests, and when in the

same instrument he gave the property taken from Harriet to Daniel T. Newcomb, he intended by the use of the word "bequeath" to convey both real and personal property mentioned in that portion of the codicil to Daniel T.

This construction does not seem to be disputed by either of the parties, and it seems to be agreed that Daniel T. took the real and personal property embraced in that provision, and that by the revocation the right of Harriet to the same was divested.

But it is insisted by the plaintiffs that, in default of lineal descendants or heirs of his body, Daniel T. took only a life estate, which terminated with his life and that of his wife Patience, at whose death the fee vested in other children of the testator and their descendants, who constitute the plaintiffs in this action.

On the other hand, it is contended by the defendants that the codicil vested the entire title to the Albany property in Daniel T. and his heirs and assigns, subject to be defeated only by his death before the testator, and that, as he survived the testator, his interest became a vested estate in fee, which, by the conveyance by Daniel T. and wife to Wheaton, vested the title in him, and the grantees, from him and successors of his interest became and are the owners in fee of the premises in question.

The language of this codicil is, as we have seen, "I * * * give and bequeath the said legacies to my said son Daniel T. Newcomb, his heirs and assigns," etc.

The learned trial court held that this devise as herein stated was absolute, but that it was cut down to a life estate by the provisions which follow, that "if my son Daniel T. Newcomb die without heirs the said legacies after his widow are to go to the heirs of Thomas W. Newcomb."

This interpretation can only be maintained by holding that the word "heirs" in the codicil relates to descendants — heirs of the body — of the devisee, and that the time of his death therein mentioned related to a period after the death of the testator.

Neither of these conclusions follow as a necessary result from the language of the codicil. While under all circumstances a child must be regarded as an heir, it by no means follows that if a person dies without children, or the descendants of children, he dies without heirs in the legal signification of that word.

Webster's definition of the word "heir" is "one who receives, inherits or is entitled to succeed to the possession of any property after the death of the owner; one in whom the title to an estate vests on the death of the proprietor; one on whom the law bestows the title or property of another after the death of the latter." Daniel T. Newcomb, while he died without children, cannot be said to have died without heirs, in the legal sense of that term. He had a brother and sister who survived him, both of whom would answer to the definition of heirs; and who, in the absence of any testamentary disposition of his property, take the same as such.

But, while the testator by this codicil did not in terms turn this absolute estate into an estate for life, by making it to depend upon the devisee having heirs of his body, it is insisted that a fair construction of the same, looking after the intent of the testator, leads to that construction, and in support of that contention we are referred to *Kiah* v. *Grenier* (56 N. Y. 220). In that case the word "heirs" was construed to mean descendants, both on account of the wording of the will and the unnatural disposition of the estate if it were construed to mean "heirs at law."

As another indication that the word heirs in that will meant children of the devisee, the vesting in possession was limited to the time when the heirs became of age, thus clearly indicating that children of the devisee, and not all who might be his heirs at law, were meant. In the cases to which we have referred there was also an illegal supension of alienation, which differs from the case at bar.

Again, we see no good reason in the case at bar for holding that the testator, by the use of the word "heirs," intended to use that word in the restricted sense contended for by the respondents.

If such had been the intent of the testator, it is reasonable to suppose that he would have used the word descendant, children, or heirs of his body, each of which would have clearly presented such intention. The devise in fee to Daniel T. can, therefore, be upheld by giving to the word heir its ordinary signification, and by so doing do no violence to the apparent intention of the testator, especially if we construe the contingency of the death of Daniel T. to relate to a period before the death of the testator.

Did the reference in the will refer to the happening of the contingency before the death of the testator?

The reasonable intendment to be drawn from the devise in fee to Daniel T., which in the same instrument imposed upon him the burden of paying legacies to other beneficiaries in the will, is, that the testator intended to do what in plain language he did do, make an absolute devise of the Albany lands.

But, when we compare the language used with the adjudications bearing upon that point, the conclusion seems irresistible that the contingency of the death of Daniel T., referred to in the codicil, by force of its legal effect, related to a period before that of the death of the testator.

In *The Matter of the N. Y., Lake Erie & W. R. R. Co.* (105 N. Y. 92) RAPALLO, J., in discussing such a provision in a will, uses this language : " It may be regarded as the settled rule of construction that, when there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that if such devisee survives the testator he takes an absolute fee ; that the words of contingency do not create a remainder over, to take effect upon the death at any time of the first taker, nor an executory devise, but are merely substitutionary, and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator."

This doctrine is in harmony with *Vanderzee* v. *Slingerland* (103 N. Y. 47), and was reiterated in *Mead* v. *Maben* (131 N. Y. 295), and in *Benson* v. *Corbin* (78 Hun, 204) BROWN, P. J., refers to the doctrine as so completely settled that he uses this language :

" The defendants do not question the general rule that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is a death during the lifetime of the testator ; and that this rule is uniformly applied in the construction of wills, unless there is some language in the instrument indicating a different intention."

This aspect of the case at bar does not seem to have been brought to the attention of the learned trial judge, and in his opinion is not discussed by him.

There is much in this will to strengthen and reinforce the contention that the testator in revoking the devise of these lands made in his original will to his daughter Harriet, and devising them in the

codicil to Daniel T., intended to devise them to the latter in fee, and that the qualification upon that devise was solely to prevent intestacy and the lapsing of that devise by the death of the devisee in the lifetime of the testator.

If, therefore, we are right in our conclusion that this was a devise in fee to Daniel T., charged only with the life estate of his wife, should she survive him, and that the contingency of his death related only to the happening of that event in the lifetime of the testator, then, as he survived the testator, he became the absolute owner of these premises, and by his deed to Wheaton, in which his wife joined, the fee and right of possession at once vested in the grantee, and are by the various mesne conveyances in the defendants, and that Thomas W. Newcomb, the contingent devisee, never acquired any title to these Albany lands under the will of Daniel Newcomb, and that the judgment in favor of his descendants is erroneous, and should be reversed.

These views render a further consideration of the case unnecessary.

Judgment reversed and a new trial granted, costs to abide the event.

PUTNAM, J., concurred; HERRICK, J., dissenting.

Judgment reversed and new trial ordered, costs to abide the event.