ANDREW G. WASHBON et al., Respondents, *v.* NANCY COPE et al., Appellants.

As a general rule and unless some peculiar and extraordinary circumstances appear, where a party appears in a court of record by an attorney, the objection that he was not served with process and that the appearance was unauthorized, may not be taken in a collateral proceeding or action, but the party is confined to a motion in the original action in order to obtain relief.

An estate granted in fee or absolutely by a will may not be cut down or limited by a subsequent clause, unless the language is so clear, unmistakable and certain as to leave no doubt that such was the intention of the testator.

A surrogate has no jurisdiction to construe the provisions of a will excepting so far as it may be necessary in order that he may properly perform some other duty imposed upon him by law.

Where a devise or bequest over is not dependent upon the death simply .of the original beneficiary, but upon death without issue or without children, the death referred to, in the absence of anything in other portions of the will tending to show a contrary intent, will be considered as a death in the lifetime of the testator.

The will of W. gave to his daughter N. a legacy of $10,000, also a share of his residuary estate. In a separate and distinct clause the will directed that, in the case of the death of N. without children, the portion given to her should be given to the testator's sons or their heirs. N. survived the testator and the executor paid over to her the legacy and her share of the residuary estate unqualifiedly, she receiving the money as absolute owner. In an action brought by heirs of the testator's sons to compel N. to give security for the ultimate safety and forthcoming of the sums so paid her, *held,* that the death referred to was a death in the lifetime of the testator, and that as N. survived him she took absolutely.

The decree of the surrogate upon final settlement of the accounts of the executors contained a statement that the contingency of the death of N. without children related to her death at any time after, as well as before, the death of the testator, and that the gifts to her were for life only. The surrogate did not decide anything in regard to the payments to N., and he made no decree for further distribution of any portion of the moneys paid to her by the executors, or as to who might become entitled thereto upon her death. *Held,* that the statement was nothing more than an expression of the surrogate's opinion; and so, it was not conclusive upon N.

*Washbon* v. *Cope* (67 Hun, 272), reversed.

(Argued December 21, 1894; decided January 15, 1895.)

A<small>PPEALS</small> from order of the General Term of the Supreme Court in the fourth judicial department, made February 7, 1893, which reversed a judgment in favor of defendants, entered upon an order dismissing the complaint on trial at Special Term and granted a new trial.

This action was brought for the purpose of compelling the defendant Nancy Cope to give security for the ultimate safety and forthcoming of certain moneys amounting to about $14,000, left to her by the fourth and seventh clauses of the will of her father, as the plaintiffs allege for her life only, in case she should die without children, and in that event the moneys were to go to the sons of the testator, share and share alike. The action was tried without a jury and the trial court found the following among other facts: The plaintiffs are grandchildren of the testator, Andrew G. Washbon, and children of John G. Washbon, the son of the testator. The testator died March 1, 1867, in his 79th year. He left a will executed by him on the 31st of January, 1865. At the time of his death, he left him surviving his sons, John G., Henry R. and Robert Washbon, and his daughter, Nancy Cope. The following is the will of the testator:

"In the name of God, amen.

"I, Andrew Goold Washbon, of the town of Morris, county of Otsego, and state of New York, in the seventy-seventh year of my life, and being of sound mind and memory, do make, publish and declare this my last will and testament in manner following, that is to say, after all my lawful debts are paid:

"*Firstly.* I give and bequeath to my beloved wife, Arabella Washbon, the sum of three (3) hundred dollars annuity or clear yearly rent chargeable to my estate, to be paid her by my executors annually, during her natural life, the same to be received by her in lieu of dower, and I further direct that my said wife, Arabella, shall have the privilege of home and residence during her life in the house now occupied by me, free of charge.

"*Secondly.* I give and bequeath to my executors hereinafter named, the farm in the town of Morris aforesaid, con-

taining about two hundred and fifty (250) acres, more or less, upon which my son John G. Washbon now resides, and which is now occupied and worked by Levi Reddington, together with the farming utensils and live stock thereon, belonging to me at the time of my decease, and also the sum of four thousand (4,000) dollars, and also the equal one-fourth part of the residue of my estate as hereinafter mentioned, and also any other's share or interest which may be hereinafter devised or given to them as trustees in trust to receive the income, rents, interest and profits thereof, and to apply the same to the use of my said son John G. Washbon during his life, and at his decease to grant, convey, transfer and pay over the same to the descendants of my said son John G. Washbon who shall be living at his decease, to whom I devise and bequeath the same so that the descendants of each deceased child, if any, of my said son John G. Washbon shall take together and *per stirpes,* one share as said deceased child, their parents would have taken if living, and for the benefit of said descendants of said son John G. Washbon.

"*Item.* I desire and request my executors and trustees to keep my said farm in good condition, repair and supply as they may be at the time of my decease.

"*Thirdly.* I give and devise to my youngest son, Henry R. Washbon, the farm in the town of Morris aforesaid, on which I now live, containing one hundred and eighty-eight (188) acres, more or less, with all the farming utensils and live stock thereon belonging to me at the time of my decease.

"*Fourthly.* I give and bequeath to my daughter, Nancy Cope, wife of John Cope, Jr., the sum of ten thousand (10,000) dollars.

"*Fifthly.* I give and bequeath to my son-in-law, John Cope, Jr., the sum of two thousand (2,000) dollars.

"*Sixthly.* I give and bequeath to my second son, Robert Washbon, the sum of twelve thousand (12,000) dollars.

"*Seventhly.* I give and bequeath and devise all rest, residue and remainder of my property, real and personal, to my three children, Robert Washbon, Nancy Cope, wife of John

Cope, Jr., and Henry R. Washbon, to be divided between them.

"*Eighthly.* I furthermore desire and direct that in the event of my daughter, Nancy Cope, wife of John Cope, Jr., shall die without children, the portion herein given to her shall be given to my sons, John G., Robert and Henry R., or their heirs, share and share alike.

"*Ninthly.* I furthermore desire and direct that my sister, Manda Fairchild, shall have privilege of home and residence on the farm which I have given and devised for the benefit of my son John G. Washbon, the same as she now occupies, with fuel and the keep of one cow, during her natural life, or so long as she wishes to occupy the same, and chargeable to the rents and profits of said farm.

"*Tenthly.* I furthermore direct and authorize my executors hereinafter named to sell all real estate which I may have except such as I have otherwise given and devised in this my last will and testament for the benefit of my heirs, at such times as said executors shall deem best.

"*Eleventhly.* I do hereby nominate and appoint my sons Robert Washbon and Henry R. Washbon, and my son-in-law, John Cope, Jr., to be the executors of this my last will and testament, hereby revoking all former wills by me made.
\* \* \*

"(Signed)      A. G. WASHBON."

After the death of the testator his will was duly admitted to probate, and the executors took upon themselves the discharge of their trust. They soon paid to Nancy Cope the amount of $10,000 spoken of in the 6th clause of his will, and also the sum of $3,500 in addition as her share of the residue of the estate provided for in the 7th clause of the will. The money was paid to her unqualifiedly and she received it as the absolute owner, and she has claimed to be the owner from that time under and by virtue of the will above mentioned. After more than 20 years this action is commenced on the ground that as Mrs. Cope is now about 67 years of age,

.and has been married for more than 30 years and never has had any children, that she ought to be compelled to give security for the forthcoming of the above-mentioned sums upon her death. Mrs. Cope, on the contrary, claims that under the terms of her father's will, as she survived her father she became entitled to the payment of the moneys mentioned therein unconditionally as her absolute property, and that in fact and in law she is the owner thereof absolutely.

Many years after the death of the testator proceedings were taken by the plaintiffs herein for the purpose of compelling an accounting by the executors of their grandfather's estate. The executors were duly cited and appeared in the Surrogate's Court for the purpose of rendering their accounts, and the proceeding was subsequently turned into a voluntary one on the part of the executors for their final accounting. A decree was entered in that proceeding, and it is claimed that Mrs. Cope, although never served with a citation, was a party to and is bound by that decree, because of her appearance in that proceeding by an attorney of the Supreme Court. That decree contained a provision in which the surrogate making it stated that "the contingency of Nancy Cope's dying without children, in the 8th clause of the will, relates to her death without children at any time, after as well as before the death of the testator. That it was the intention of the testator, as gathered from his will, that the bequests to Nancy Cope were to be a life use merely, in case she should die at any time without children."

Further facts are stated in the opinion.

*Burr Mattice* for appellant. An absolute bequest followed by a provision that if the legatee dies without children such bequest shall go to another is to be construed as meaning a death within the lifetime of the testator, and if the legatee survive the testator the bequest becomes absolute. (*Quackenbos* v. *Kingsland*, 102 id. 128; *Vanderzee* v. *Slingerland*, 103 id. 47; *N. Y., L. & W. R. Co.* v. *Van Zandt*, 105 id. 89; *Austin* v. *Oaks*, 117 id. 595; *Black* v. *Williams*, 21 N.

Y. S. R. 263; *Benson* v. *Corbin*, 78 Hun, 202; *Stokes* v. *Weston*, 142 N. Y. 433; 69 Hun, 608; *Livingston* v. *Greene*, 52 N. Y. 118; *Embury* v. *Sheldon*, 68 id. 227; *Roseboom* v. *Roseboom*, 81 id. 356; *Campbell* v. *Beaumont*, 91 id. 464; *Byrnes* v. *Stillwell*, 103 id. 453; *Quinn* v. *Hardenbrook*, 54 id. 86.) The decree of the Surrogate's Court was not binding upon Nancy Cope. (Code Civ. Pro. §§ 1819, 2742.) *Van Rensselaer* v. *Van Rensselaer*, 113 N. Y. 207; *People* v. *Johnson*, 38 id. 63; *Hynes* v. *Esty*, 116 id. 501, 509; *Stannard* v. *Hubbell*, 123 id. 520, 528; *Springer* v. *Bien*, 38 N. Y. S. R. 848–850; *Woodgate* v. *Fleet*, 44 N. Y. 1, 12; *Carlin* v. *Richardson*, 17 N. Y. S. R. 399; *Campbell* v. *Consalus*, 25 N. Y. 613.)

*Israel T. Deyo* for respondents. The appeal purporting to have been taken from the order of reversal by O. F. Matterson, Esq., in behalf of James C. Washbon, Arthur Washbon, Frederick Washbon and Russell Washbon, should be dismissed, and the cause as to them stricken from the calendar. (Code Civ. Pro. §§ 1318, 1325, 1326; *Pharis* v. *Gere*, 112 N. Y 408.) Upon an appeal from an order of the General Term granting a new trial, this court is not confined to the grounds upon which the decision of the court below was based. The appellant takes the risks not only of the questions considered by the court below, but of every other exception appearing on the record, and the respondent may sustain the order upon showing any legal error, whether noticed by the court below or not. (*Mackay* v. *Lewis*, 73 N. Y. 382; *Krekeler* v. *Thaule*, 73 id. 608; *Cobb* v. *Hatfield*, 46 id. 533; *Reed* v. *McConnell*, 133 id. 425; *People ex rel.* v. *Board of Supervisors*, 70 id. 228.) The contingency of Nancy Cope's dying without children relates to her death at any time, either before or after that of the testator. (*Britton* v. *Thornton*, 112 U. S. 526; 131 N. Y. 255; *In re Wills*, 113 id. 396; *In re Tienken*, 131 id. 391; *Jackson* v. *Chew*, 12 Wheat. 153; *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Hennessy* v. *Patterson*, 85 id. 91; *Mead* v. *Maben*, 131 id. 255.) The court erred in

permitting the defendant, on the trial of this case, to intro-
duce evidence tending to impeach the validity of the decree
of the Surrogate's Court. (*Ferguson* v. *Crawford*, 70 N. Y.
269; *Stevens* v. *Fisher*, 30 Vt. 200; *Wright* v. *Fletcher*, 12
id. 431.) The decree rendered by the surrogate of Otsego
county, upon the final settlement of the executor's accounts,
was binding and conclusive upon her in this action, even if
the citation was not in fact served upon her. (*In re Hood*, 90
N. Y. 512; *Ferguson* v. *Crawford*, 70 id. 253; *Vilas* v. *P.
& M. R. R. Co.*, 123 id. 440; *In re Flynn*, 136 id. 287.) If
the contingency of Nancy Cope's dying without children
relates to a period after as well as before the death of the tes-
tator, or if the decree of the Surrogate's Court is conclusive
and binding upon her in this action, plaintiffs are entitled to
the relief asked for in their complaint. (*Emmons* v. *Cairns*,
2 Sandf. Ch. 376; *Marlett* v. *Marlett*, 14 Hun, 313; Perry
on Trusts, § 549; *Burnett* v. *Lester*, 53 Ill. 325; *Brown* v.
*Curry*, 19 Ala. 805; *Clarke* v. *Saxon*, 1 Hill Ch. 69, 74; Tif-
fany & Bullard on Trusts, 619; *Graham* v. *N. T. L. I. & T.
Co.*, 46 Hun, 267.) The jurisdiction of the surrogate to con-
strue the will cannot be questioned. (Code Civ. Pro. § 2793;
*Garlock* v. *Vandervort*, 128 N. Y. 374; *In re Ver Plank*,
91 id. 439; *Purdy* v. *Hayt*, 92 id. 446; *Chipman* v. *Mont-
gomery*, 63 id. 221; *Welsh* v. *N. Y. C. R. R. Co.*, 53 id. 610;
*In re French*, 52 Hun, 303; *In re Underhill*, 117 N. Y. 471;
*Marsh* v. *Avery*, 81 id. 29; *O'Connor* v. *Huggins*, 113 id.
511; *In re Fernbacher*, 8 Civ. Pro. Rep. 308.)

PECKHAM, J. The trial court in this case held that, by the
true construction of the will of Mr. Washbon, the defendant
Nancy Cope having survived her father, took an absolute estate
in the moneys bequeathed to her by his will. The General
Term, upon appeal, has reversed that finding, and has construed
the will as giving but a life estate to Mrs. Cope if she should
die without children. The judgment of the Special Term
was, therefore, reversed and a new trial granted. The defend-
ant Mrs. Cope has appealed here. She maintains now before

us that the interpretation placed by the Special Term upon the will of her father in this action is the correct one. The plaintiffs maintain the contrary, and as a bar to the defendant Mrs. Cope entering upon an inquiry as to what is the true construction of the will of her father, they produce the decree of the surrogate upon the accounting of the executors of her father's will, in which the surrogate construed the will as giving to Mrs. Cope only a life estate in case she should die without children. It becomes necessary, therefore, before we enter upon a discussion as to what is the true meaning of the will of the testator, to determine the correctness of the plaintiffs' claim in regard to the effect of the surrogate's decree. Mrs. Cope denies that any such effect is to be given to that decree, because of the fact that she was never served with any citation in that proceeding, and that the appearance of an attorney for her therein was wholly unauthorized and did not permit of any adjudication being made in that proceeding which would be binding upon her, and also because the surrogate had no jurisdiction to construe the will, and his construction of it was, therefore, wholly without any binding force.

We think the objection grounded upon the unauthorized appearance of her attorney and the non-service of any process upon her cannot prevail in this action. It has been settled by an unbroken line of decisions in this state, running many years back, that, unless under some peculiar and extraordinary circumstances, not existing in this case, the objection that a party was not served and an appearance by an attorney in a court of record for such party was unauthorized, and, hence, that the judgment was without jurisdiction, cannot be taken in a collateral proceeding or action, and that the party is confined to a motion in the original action in order to obtain relief. This was decided in the case of *Denton* v. *Noyes* (6 Johns. 297) and has been followed by many cases since that time, the last of which in this court is that of *Vilas* v. *R. R. Co.* (123 N. Y. 440), where the whole doctrine was reviewed and affirmed as above stated. The case of *Ferguson* v. *Crawford* (70 N. Y. 256) also contains a discussion of the general doc-

trine in the opinion by RAPALLO, J.   In this case we are, therefore, bound to regard the decree of the surrogate as of the same effect, so far as the rights of Mrs. Cope are concerned, as if she had been duly cited or had authorized her attorney to appear for her in that proceeding.

As a general rule, the surrogate has no jurisdiction to construe the provisions of a will excepting so far as it may be necessary for him to do so in order that he may properly perform some other duty which has been imposed upon him by law.   There is no general and inherent power vested in him or in his court to construe devises or bequests as a distinct and independent branch of his or its jurisdiction.   Even a court of equity vested with general jurisdiction over equitable subjects has no such inherent power as that, and its only power to construe the provisions of a will is based upon, and is incident to, its jurisdiction over trusts.   (*Mellen* v. *Mellen*, 139 N. Y. 210, and cases cited in the opinion of ANDREWS, Ch. J.)   The statute itself provides for the effect of a judicial settlement of the accounts of the executors.   (See sections 2742 and 2743, Code Civ. Pro.)

The facts in this case do not bring the determination of the surrogate upon the question of the construction of this will regarding its provisions for Mrs. Cope within either of those sections, and such determination is not conclusive or binding upon her.   Sometimes it may be necessary for the surrogate to construe the provisions of a will in order that upon the final accounting of the executors thereof he may decree distribution to those who, by the provisions of the will, are entitled to any portion of the proceeds remaining undistributed, or where distribution by the executors has already been made, may, upon their accounting, determine whether they have or have not erroneously and improperly made distribution of some of the estate, and if they have the surrogate may hold them liable in their accounts.   But generally it is for the purpose of determining the correctness of the accounts of the executors or of decreeing proper distribution of the estate that this jurisdiction to construe the terms of a will becomes necessary, and may be

exercised for the purpose of carrying out the jurisdiction actually conferred upon the surrogate. In this case no such contingency occurred. The moneys had been paid by the executors to Mrs. Cope, and the surrogate, by his decree, did not decide that such payments were legal or illegal. He decided nothing in regard to it, and he made no decree for the future distribution of any portion of the moneys which had been paid to Mrs. Cope by the executors. There was a bare assertion that Mrs. Cope took but a life estate in case she died without children, and there was no decree made for the distribution of such funds upon the death of Mrs. Cope, nor any decision in regard to who the parties were who might, upon her death, become entitled to those moneys or any portion of them. Thus the statement of the surrogate was nothing more than his opinion as to the proper construction of the will of the testator, upon which he based no action and made no decree. He did not exercise the jurisdiction vested in him upon the accounting of the executors by providing for the distribution of these moneys, or by deciding upon the legality of their past payments, and in this case it was only for that purpose that he might claim jurisdiction to construe the provisions of the will. As that decree is not conclusive upon Mrs. Cope so far as the construction of the will of her father is concerned, we are brought to an examination of the will in order to see what its correct construction may be.

We find in the first place by the 4th clause an absolute and unconditional bequest of $10,000 to his daughter, Nancy Cope, wife of John Cope, Jr., and by the 7th clause the testator makes residuary legatees and devisees of his three children, Robert, Henry and Nancy, the amount to be divided between them. We then find the 8th clause, that in the event of his daughter dying without children the portion given in the will to her was to be given to his sons or their heirs, share and share alike, and the sole question in the case is what is meant by the expression "in the event my daughter, Nancy Cope, wife of John Cope, Jr., shall die without children the portion," etc. Death at what time? Does it mean her death

before the death of the testator, or does it mean her death at any time either before or after his death, provided she shall die without children? We are confronted in the first place by the well-settled rule that courts refuse to cut down an estate already granted in fee or absolutely when the supposed terms of limitation are to be found in some subsequent portion of the will, and are not in themselves clear, unmistakable and certain so that there can be no doubt of the meaning and intention of the testator. (See *Byrnes* v. *Stilwell*, 103 N. Y. 453; *Roseboom* v. *Roseboom*, 81 id. 356.)

The expression in the 8th clause, giving the most weight to it in favor of the plaintiffs, can only be said to be at least doubtful as to what period of time the death of the defendant Mrs. Cope is to be referred, and hence if the rule above mentioned is ever to be enforced it would seem as if this were one of the cases described by the courts as being proper for its application.

There is another rule which is also well settled, that where the devise or bequest over to third persons is not dependent upon the event of death simply, but upon death without issue or without children, the death referred to is death in the lifetime of the testator. It is true that in some cases courts have stated that they would lay hold of slight circumstances to vary this construction and give effect to the language according to its natural import as referring to a death, under the circumstances mentioned, happening either before or after the death of the testator. But those circumstances must be such that a court can reasonably say there is good and fair ground upon which to base an alteration of the rule outside of and beyond the language which courts have heretofore held compelled them to enforce the rule as stated. When the language of a devise or bequest is such that the courts, without looking at any of the other provisions of a will, would say that such language meant, within the well-settled decisions, that the death spoken of was death before that of the testator, then the language in other portions of the will which is to alter that rule must be such as at least

to give fair, clear and reasonable ground for saying that its proper effect is to change the rule in question.

In *Quackenbos* v. *Kingsland* (102 N. Y. 128) the language of the will was very much like that used in the 8th clause of this will, and it was held that the death referred to was the death of the beneficiary during the lifetime of the testator, and that as the beneficiary outlived the testator he took an absolute estate. In that case as in this, it was claimed that other language in the will showed an intent contrary to that which was attributed to the testator by the rule actually adopted, but a careful examination of the language failed to convince this court that there was enough in it to prevent the application of the general rule, and the case was decided accordingly. In *Vanderzee* v. *Slingerland* (103 N. Y. 47) the existence of the rule was again asserted, but in that case it was held there was sufficient in the language of the will to show that by the death of the beneficiary was meant his death at any time either before or after that of the testator. The provisions of that will, upon which the learned judge based his argument and which were sustained by the court, were quite strong and convincing of a different intent on the part of the testator from that which would usually be given to the words of bequest. Cornelius, the son of the testator, was the original beneficiary, but he was charged with the payment of certain legacies within two years after the death of the testator, and the language of the gift over was "in case my son Cornelius should die before the provisions of this will become an act, the devisees last named (the grandchildren) shall perform and fulfill all the conditions required of my son Cornelius to the legatees named in this my will." It was seen from the language of the will that the testator had in mind two contingencies : First, that his son Cornelius might die before him without issue, or die after him, and even after the two years and before he had paid the legacies, and it was held that the burden of paying the legacies was imposed upon the ulterior devisee in case of the death of Cornelius either before the testator or after his death, in case the direction for their

payment should then be unexecuted. And upon that assumption of the true construction of the clause it was held to be clear that the words "death without issue," referred to a death at any time because it was inconceivable that the testator could have intended that the grandchildren should pay the legacies except in the event of their taking under the devise. I think the learned judge made it entirely clear that that was a case where it was proper and indeed necessary to discard the general rule for the purpose of following out the clear intention of the testator evidenced by language pointing unmistakably to a meaning such as was given to it by the decision of this court.

In *Mead* v. *Maben* (131 N. Y. 255) the general rule was again recognized and also its well-settled exception, that where the context of the will shows a contrary intent it should prevail, and the exception was applied to the will in that case.

There is nothing in the decision of the last-cited case which aids in the construction of the will now before us.

In *Stokes* v. *Weston* (142 N. Y. 433) the general rule is again asserted and carried out in regard to a will, the provisions of which were at least as doubtful as the one under consideration. (See, also, *Matter of Tienken*, 131 N. Y. 391, 403.)

Enough cases have been cited to show what indeed there is no contradiction in regard to, that the exception to the rule must be quite clearly apparent from the language otherwise used in the will, and that unless such language is to be found which shall render the meaning of the testator quite clear the exception to the rule is not sustained and the rule itself must prevail. Upon looking carefully through the other provisions of this will we are unable to find any such clear indication of the meaning of the testator as would be requisite for us to find in order to overturn this general rule and set up the exception in its place. Speaking generally, the scheme of the will would seem to have been that the children of the testator should share equally in his estate. The $12,000 of personalty which is given to one of his children is made up in the case of Mrs. Cope by $10,000 to her and $2,000 to her hus-

band.    There is no proof as to the actual value of the two
farms given respectively to his other two sons, but we cer-
tainly should not assume that they were greater than the
portion given to his other children, in the absence of any evi-
dence on that subject.    The argument that the testator
intended to keep the property which he gave to his daughter
within the limits of his family and his heirs, and that conse-
quently the death he had in view was the death of Mrs. Cope
at any time without children, is one which can be adduced in
most cases where language of this kind has been employed,
and yet that fact has never yet been held to be sufficient to
change the meaning which the law has placed upon language
of this kind when used in a will.    Upon the whole, we think
that under the terms of this will Mrs. Cope took an absolute
property in the bequests to her and that the Special Term was
right in dismissing the plaintiffs' complaint.

The order of the General Term should, therefore, be
reversed and that of the Special Term affirmed, with costs to
the defendant Mrs. Cope in all courts.    The appeal of the
other defendants is dismissed upon the motion to dismiss made
by the counsel for the plaintiffs herein, with costs.

All concur, except ANDREWS, Ch. J., not voting and
HAIGHT, J., not sitting.

Ordered accordingly.