also liable for punitive damages, if, in addition to its libelous character, the employés published it without making proper inquiry to ascertain its truth or falsity. See Grant v. Herald Co., 42 App. Div. 355, 59 N. Y. Supp. 84. It seems, therefore, from the above cases, that the publication of the rules was a fact immaterial to any issue being tried, and its introduction in evidence was error.

Was it a harmful error? We cannot say that it was not. The jury are nowhere instructed as to any particular application of this evidence. It was offered generally in the case, and received without any limitation. We cannot say but that the° jury understood that the promulgation of such rules excused the defendant, although those in charge of his paper published this article concerning the plaintiff without malice, but without any reasonable inquiry as to its truth. There was evidence before them upon that subject, and it may have been that their verdict was made up on that theory.

For this reason the judgment must be reversed, and a new trial granted, with costs to appellant to abide the event.

EDWARDS, J., concurs. SMITH, J., concurs in result. KELLOGG, J., dissents.

---

(59 App. Div. 541.)

## In re CRAMER.

(Supreme Court, Appellate Division, Fourth Department. March 19, 1901.)

WILLS—CONSTRUCTION—SURVIVOR—HEIRS.

> Where testatrix, 85 years of age, gave all her property to her 2 great-grandchildren, who were sisters, aged 11 and 9 years, providing that, in case of the death of either without heir or heirs, such one's share should go to the survivor, and made no provision for their mother to take in any event, on the death of one of them after testatrix, leaving her sister and mother surviving, as her only heirs, the surviving sister took the whole property.
>
> McLennan and Laughlin, JJ., dissenting.

Appeal from surrogate's court, Wayne county.

Judicial settlement of the accounts of Emma E. Cramer as general guardian of Grace E. Cramer, deceased. From a decree directing her to pay money received as such guardian to herself as general guardian of Myrtie Cramer, she appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Charles McLouth, for appellant.
Charles T. Ennis, special guardian, respondent.

SPRING, J. On the 25th day of September 1897, Janette T. Guernsey, a widow lady 85 years of age, made her last will and testament. She gave to her two great-grandchildren, Gracie and Myrtie Cramer, all of her personal property, and then added this clause to the bequest:

"But in the case of the death of either of said great-grandchildren, Gracie or Myrtie, without heir or heirs, I direct that such share of personal property shall go to the survivor of them."

She likewise by a separate item devised her real estate to these two beneficiaries, supplementing the devise by a clause similar to the one quoted. At the time of the execution of the will, Gracie was 11 years of age, and Myrtie 9. Gracie died after the testatrix, leaving her mother and sister as her only heirs at law. The mother was the general guardian of this daughter, now deceased, and had received money from the executrix of the will of Mrs. Guernsey, and the surrogate construed the will of the testatrix in order to determine to whom this money belonged. Aside from the sum directly involved, there are funds in the custody of the executrix awaiting distribution until the determination of this appeal. The question is, did the testatrix intend that in case one sister died the right of the other to take her share depended upon the latter dying without any heirs at law, or was that term restricted to descendants? The mother contends that, inasmuch as the daughter died leaving heirs, the contingency which was to forestall the transfer of the share to the surviving sister has not happened.

It is well settled that in construing wills the words "heirs," "heirs at law," or "issue" will be given either their enlarged or restricted sense, as best exemplifies the wishes of the testator. Johnson v. Brasington, 156 N. Y. 181, 50 N. E. 859; Insurance Co. v. Viele, 161 N. Y. 11–21, 55 N. E. 311; Armstrong v. Galusha, 43 App. Div. 248, 60 N. Y. Supp. 1. If the right of Myrtie to receive this share depended upon her sister, Gracie, dying without any heirs at all, then we have an absurdity, for both Myrtie and her mother were her heirs. It would be rare indeed for one to be utterly without heirs. The clause is in the will for some purpose. Without it the mother and her daughter would receive this share as next of kin. Either it was the design of the testatrix to make effective the transfer to the sister who survived, in case the one who died was childless, or else the clause is surplusage. We must give it some force, unless in so doing we impair the general plan of the will, and the only interpretation which tallies at all with the obvious intention of the testatrix is that the surviving sister is entitled to this property.

The more troublesome question is, however, whether Gracie, having survived the testatrix, did not become vested with the bequest, so that it must now be apportioned according to the statute of distribution. Is the word "survivor" restricted to death before that of the testatrix? While the general use of the term is limited to that sense, the rule is not a hard and fast one, and yields, like all arbitrary tests, to the intention of the testator. Vanderzee v. Slingerland, 103 N. Y. 47–55, 8 N. E. 247; Mead v. Maben, 131 N. Y. 255, 30 N. E. 98; Nellis v. Nellis, 99 N. Y. 505, 3 N. E. 59; Becker v. Becker, 22 App. Div. 234, 47 N. Y. Supp. 866.

In Benson v. Corbin, 145 N. Y. 351, 40 N. E. 11, Judge Finch, in construing for the court the expression "without issue," in a will, and commenting upon this canon of interpretation, observes, at page 359, 145 N. Y., and page 12, 40 N. E.:

"While such is the general rule, it is said to maintain its hold somewhat weakly and with a doubtful grasp, and to yield easily to any fact or circumstance indicating a different intention."

In Mead v. Maben, 131 N. Y. 255, 30 N. E. 98, the testator divided his estate, after a few unimportant legacies, into seven parts, giving one to each of his children; and, until the land was disposed of, its income was to be paid to them. One clause of the will provided:

"If any of my children, except Diademia, shall die without leaving surviving child or children, or heirs of the body, then the share or portion of my estate so given to such deceased children shall go equally to my other children. * * *"

All of the children survived their father, but one subsequently married and died without children, but leaving a husband, who claimed the interest of his wife became absolute upon the death of her father. The court, after referring to the general rule indicated, and declaring that it is subordinate to the intention of the testator's scheme for the distribution of his property by his will, adds:

"In all the authorities which are referred to upon the subject of the application of the general rule above referred to, the courts (as, indeed, does Mr. Jarman, upon the authority of whom the courts have more or less relied) assume that the context of the will is silent, and that the instrument contains nothing indicating an intention which interferes with the application of this rule. The rule must yield if, upon consulting the other provisions of the will, we can find a warrant for importing into the language used by the testator the natural and an ordinary significance. It cannot be denied that the ordinary import of the words 'if any of my children shall die' is that of a death of any of them at any time; and there are evidences in this will that not only such was the probable intention of the testator, but that to give a different construction to the language would be to thwart an apparent and a natural purpose of keeping his estate from the possession of strangers in blood."

In the present case, the testatrix, with her 85 years, and with these little girls, only 9 and 11, respectively, could not have intended to restrict the survivorship without heirs to a death prior to her own. In the natural course of events, if one of these heirs died before the testatrix she would leave no children. In arriving at her purpose we cannot ignore this obvious fact, and the further fact that they would probably outlive her. The testatrix had one object in view, and that was to insure the transmission of her estate to these two children, or the survivor of them unless one died leaving issue. In further confirmation of this is the fact that no specific provision is made for their mother to take in any event. While she would be the beneficiary if both the children died childless, yet the testatrix apparently was not contemplating this contingency, but was animated by the desire to aid the children. If they had not been uppermost in her purpose, she would have been apt to provide for the mother when the death of either child occurred. Her omission to do this is a circumstance indicating that she expected the great-grandchild surviving to receive the entire property, unless, as time ran along, children were born before death intervened. Nor is the clause under consideration wholly free from ambiguity. The expression "without heir or heirs," as has been stated, may be varying in its compass,—in the one case restricted to descendants, and in another including collateral relatives; the meaning depending upon other provisions of the will, or upon other facts essential to ascertain the intention of the testatrix.

Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388, is not decisive of this case. The testator in that case was an old man; but his daughter,

the beneficiary, was a married woman, and the birth of a child during the lifetime of the testator was not at all improbable. In the case at bar it could hardly be expected. In that case there was a bequest in unmistakable terms to the daughter, and it was by a subsequent and independent clause that any paring down of the legacy was made, if at all. The court invoked the rule that an estate once granted will not be lessened by succeeding portions of the will unless the intention to cut down is clear and definite. Again, the general plan of the will in that case involved an equal distribution among the children of the testator. There was nothing in the context of the will, and no circumstance, which called for a departure from the general rule as to the vesting of estates. In the present case there seems to have been an intention to exclude the mother of the infant children from participating in the estate of the testatrix. In the Washbon Case the legacy to the daughter, and her aliquot portion as residuary legatee, were paid over to her as absolute owner. After the lapse of 20 years, and as she was then 67 years of age, and had never given birth to a child, the action was commenced to compel her to give security for the return to the estate, upon her death, of the moneys paid to her. The scheme of the will, the recognition and long acquiescence of the parties interested in her unqualified ownership, were potent circumstances in favor of adhering to the general rule of construction referred to. In the construction of wills containing clauses of this kind, each must depend upon its own peculiar facts, and it seems clear to my mind that the testatrix in this case intended that, if either of her beneficiaries died childless, the surviving legatee should take.

The decree of the surrogate's court should be affirmed, with costs of the general guardian payable out of the fund. So ordered.

ADAMS, P. J., and WILLIAMS, J., concur. McLENNAN dissents in opinion, and LAUGHLIN, J., in memorandum.

McLENNAN, J. (dissenting). The will of Janette T. Guernsey, which is the subject of this litigation, provides as follows:

"First. After the payment of all my just debts and funeral expenses, I give and bequeath to my two great-grandchildren, Gracie and Myrtie Cramer, daughters of Leonard Cramer, deceased, all my personal property, including my household furniture, equally, share and share alike. But in the case of the death of either of said great-grandchildren, Gracie or Myrtie, without heir or heirs, I direct that such share of personal property shall go to the survivor of them."

By the second paragraph of the will precisely the same disposition is made by the testatrix of her real property, by the use of substantially the same words. The testatrix died, leaving, her surviving, her said two great-grandchildren and their mother, Emma E. Cramer, the appellant. Afterwards Gracie died, leaving, her surviving, her sister, Myrtie, and her mother. The respondent, Myrtie Cramer, claims the entire property left by the testatrix, solely upon the ground that she survived her sister, Gracie. The appellant, Emma E. Cramer, the mother of Gracie and Myrtie, claims to take one-half of the devised property as heir of her deceased daughter, Gracie. The surrogate's court determined, in substance, that the respondent,

Myrtie Cramer, was entitled to the entire estate left by the testatrix, and from such determination this appeal is taken.

The language used in the disposing clause of the will has a well-defined and well-recognized legal meaning. The word "death" in the clause, "but in the case of the death of either of said great-grandchildren," refers to a death within the lifetime of the testatrix. The reason for such construction is, as stated by Brown, J., in Fowler v. Ingersoll, 127 N. Y. 472, 28 N. E. 471—

"To prevent a lapse in case the first devisee was not living at the death of the testator, and not create an executory devise or remainder over upon the death at any time of the first taker. * * * The reason assigned for the rule is that as death is the certain event, and time only is contingent, the words of contingency can only be satisfied by referring them to a death before some particular period, and, none being mentioned, the time referred to must be presumed to be the testator's own death."

In Stokes v. Weston, 69 Hun, 608, 24 N. Y. Supp. 26, the court says (Haight, J.):

"It is unquestionably a well-settled rule of construction that where there is a devise to one person absolutely, and in case of his death to another, the words of contingency refer to a death in the lifetime of the testator."

The precise question was decided in Moore v. Lyons, 25 Wend. 119, after a most elaborate discussion and full consideration of the entire subject. In that case the court said:

"It is a well-settled rule of law, recognized in our own state, that 'courts will never construe a limitation into an executory devise, when it can take effect as a remainder; nor a remainder to be contingent, when it can be taken to be vested.'"

The will under discussion in that case devised certain real estate to one for life, and from and after his death to three others, or to the survivors or survivor of them, their or his heirs and assigns, forever. It was held that the remainder-men took a vested interest at the death of the testator, and consequently, though at the time of the decease of the tenant for life there was but one of the remainder-men surviving, he took only one-third of the estate, and the heirs at law of the two others took the residue. It was held that the words of survivorship referred to the death of the testator, and not to the death of the tenant for life. This was held to be the necessary construction of the words used, unless from other parts of the will it was manifest that the intent of the testator was otherwise. The decision was approved and referred to as an authority covering the whole subject by Peckham, J., in Livingston v. Greene, 52 N. Y. 118. In that case the testator, after giving a life estate to his wife in all his real estate, by the seventh clause of the will provided as follows: "I give and bequeath all my real estate * * * to all my children, and to their heirs and assigns forever, to be equally divided, share and share alike; and, should any of my children die and leave lawful heirs, such heirs to receive the portion that their parent would have been entitled to had such parent lived, viz. after the death of my beloved wife, Frederica, I give to my son John A. Livingston one equal share,"—and so on, naming all his 11 children. It was held that each of the children who survived the testator took a vested remainder in his real estate at the time of the testator's death. The court said:

"In regard to the purpose of this will, it will not do to depart from well-settled rules of construction,—from the meaning which authorities, well considered, have attached to the language."

Quackenbos v. Kingsland, 102 N. Y. 128, 6 N. E. 121, was an action to construe the will of K., which, after certain devises and legacies, gave the residue of his estate "unto my son Daniel, and to his heirs; but, in case my son Daniel should die without lawful issue, I give and bequeath it to my remaining children, share and share alike." It was held that the death referred to related to the death of the testator, and upon the happening of that event during the life of Daniel the latter became vested with the residuary estate, and entitled to its immediate possession. Judge Danforth, in writing the opinion of the court, said:

"The question upon this appeal * * * turns upon the true construction of the residuary clause above set out. * * * That question was whether Daniel Kingsland, the younger, took the residue of his father's estate absolutely. To answer it, we must look for the intention of the testator, and that seems plain, upon the language employed by him. It gives the remainder of his estate to his 'son Daniel Kingsland, and to his heirs.' So far absolutely, but, as this interest could not vest until his death, the testator, to provide against the consequences of a lapse, says: 'In case my son Daniel should die without lawful issue, I give the estate to my remaining children.' These words, we must hold, upon principle and authority, relate to the death of the testator; and upon that event during the lifetime of Daniel Kingsland, Jr., the latter became vested with the residuary estate, and was entitled to its possession. This conclusion is required by the decisions of the courts in many similar cases. Embury v. Sheldon, 68 N. Y. 227; Livingston v. Greene, 52 N. Y. 118. Indeed, the argument of the learned counsel for the appellant seems to concede that the words of the testator, taken in their legal sense, permit no other result; and his contention is that their meaning may be modified or changed by other provisions in the will, showing a different intent. No doubt, the whole will is to be looked at, as containing the intent of the testator, and one part may be made to give way to some other controlling provision. Hoppock v. Tucker, 59 N. Y. 202. But here we find nothing to warrant a presumption against the legal meaning of the words used in the residuary clause."

The question was again considered in Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388, where the rule was again reiterated. Peckham, J., writing the opinion of the court, said:

"There is another rule which is also well settled,—that where the devise or bequest over to third persons is not dependent upon the event of death simply, but upon death without issue or without children, the death referred to is death in the lifetime of the testator. It is true that in some cases courts have stated that they would lay hold of slight circumstances to vary this construction, and give effect to the language according to its natural import, as referring to a death, under the circumstances mentioned, happening either before or after the death of the testator. But those circumstances must be such that a court can reasonably say there is good and fair ground upon which to base an alteration of the rule, outside of and beyond the language which courts have heretofore held compelled them to enforce the rule as stated. When the language of a devise or bequest is such that the courts, without looking at any of the other provisions of a will, would say that such language meant, within the well-settled decisions, that the death spoken of was death before that of the testator, then the language in other portions of the will which is to alter that rule must be such as at least to give fair, clear, and reasonable ground for saying that its proper effect is to change the rule in question."

After referring to a large number of cases, Judge Peckham continues:

"Enough cases have been cited to show that—indeed, there is no contradiction in regard to that—the exception to the rule must be quite clearly apparent from the language otherwise used in the will, and that, unless such language is to be found which shall render the meaning of the testator quite clear, the exception to the rule is not sustained, and the rule itself must prevail."

By the will under consideration in that case the testator, W., gave his daughter a legacy of $10,000. In a separate clause the will directed that, in case of the death of his daughter without children, the portion given to her should go to the testator's sons or their heirs. The daughter survived the testator. It was held that the death referred to was a death in the lifetime of the testator, and that, as the daughter survived him, she took the devise absolutely.

We think it may be said of all the cases decided by the highest court of this state, as was said by the court in Moore v. Lyons, supra, with reference to the English cases upon the subject, that they establish most conclusively the general rule "that words of survivorship in a will should, in all cases where there is no special intent manifest to the contrary, be taken to refer to the death of the testator."

The decision in Vanderzee v. Slingerland, 103 N. Y. 47, 8 N. E. 247, referred to in the prevailing opinion, we think in no manner supports the respondent's contention. It is said in the headnote:

"Where there is a devise or bequest simpliciter to one person absolutely, and in case of his death to another, it is a settled rule of construction that the words of contingency refer to a death in the lifetime of the testator." "The same rule applies where the devise over is not dependent upon the event of death simply, but upon death in connection with some collateral event, as death without issue or children," etc.

In that case the will of V. devised his real estate to his son Cornelius, "subject to the proviso hereinafter contained." After various legacies which were, in consideration of the devise, directed to be paid by C. within two years after the testator's death, the will contained a proviso to the effect that, if C. "died without issue," then the estate devised to him should go to four grandchildren of the testator. The concluding portion of the clause is as follows:

"In case my son Cornelius should die before the provisions of this will become an act, the devisees last named shall perform and fulfill all the conditions required of my son Cornelius to the legatees named in this my will."

Cornelius survived the testator, but died without issue. It was held that the words "died without issue" referred to a death at any time, whether before or after the death of the testator. But let us see what led the court to the decision reached. Andrews, J., in his opinion, says:

"But where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, followed by a devise over in case of his death without issue, it has, I think, been uniformly held in England, and it is the rule supported by the preponderance of judicial authority in this country, that the words refer to a death without issue in the lifetime of the testator, and that the primary devisee surviving the testator takes an absolute estate in fee simple."

A large number of cases in support of the proposition are cited by the learned judge, and the reason for the rule is declared to be found-

ed in part upon "the disinclination of the courts to cut down a fee once given, except upon clear words." The judge then continues:

"But the rule established by the courts applies only where the context of the will is silent, and affords no indication of intention, other than that disclosed by words of absolute gift, followed by a gift over in case of death or of death without issue, or other specified event."

The judge then proceeds to show that the context of the will there under discussion was not "silent," and that it did afford an indication of an intention different from that implied by the words used. He points out that the gift to Cornelius in the second clause of the will is made "subject to the proviso hereinafter contained," and that the tenth clause, when construed in connection with the second clause, gave room for the conclusion that it referred to a death either before or after the testator's; and it is said that such conclusion is also justified because of the last paragraph of the tenth clause of the will, which declares:

"In case my son Cornelius should die before the provisions of this will become an act, the devisees last named [the grandchildren] shall perform and fulfill all the conditions required of my son Cornelius to the legatees named in this my will."

The will in the case at bar contains no subsequent or inconsistent clauses. Substantially the entire will is contained in a single paragraph. There is no repetition of words, and no doubtful meaning is possible. There is nothing in the context to indicate, even in the slightest degree, an intention on the part of the testatrix different from what is imported by the legal meaning of the words employed.

In Mead v. Maben, 131 N. Y. 255, 30 N. E. 98, also referred to in the prevailing opinion, it was expressly held that the rule that where a testamentary gift is to one or more persons, and, in case of the death of any of them without issue, to the survivors, the death referred to is one in the lifetime of the testator, and that any one of said persons surviving the testator takes absolutely, is of universal application, unless the context of the will contains something showing a contrary intent. But in that case it was held (which is undoubtedly the law) that where the entire scheme of the will, particular clauses, or the context show that the testator intended a death occurring at any time, such intention must prevail; and after considering all those things the court determined in that case that the testator intended a death occurring at any time, and the will was construed accordingly.

The only cases in which an exception to the rule has been held to exist are where a life estate was created by the will. Stokes v. Weston, supra; Mullarky v. Sullivan (N. Y. App.) 32 N. E. 762; Fowler v. Ingersoll, supra. There was no life estate created by the will in question, and the exceptions to the general rule pointed out in those cases need not be considered. In the case at bar there is nothing in the will itself to indicate any intention on the part of the testatrix that the words used by her should be given or have any other than their well-recognized legal meaning and significance. The will is not ambiguous. There are no subsequent clauses. "The context is silent." The whole will, except the formal parts, is contained in two paragraphs, which are identical. Gracie and Myrtie are given the en-

tire estate of the testatrix absolutely, share and share alike, but in case of the death of either without heir or heirs the survivor shall take. We think no case can be found where such language has been held to refer to a death after the death of the testator, but that in every case such language has been held to vest the title absolutely in the devisees immediately upon the death of the testator.

In the prevailing opinion it is said that the words "heir or heirs" should be held to mean "issue" or "heirs" of the body, and that, Gracie having died wi. >ut children, for that reason the entire estate of the testatrix went to the surviving sister. Gracie left, her surviving, "heirs,"—the appellant, her mother, and her sister, Myrtie. We find no authority for restricting the word "heirs," as used in the will, to "issue" or "heirs of the body." In Newcomb v. Lush, 84 Hun, 254, 32 N. Y. Supp. 526, the court said:

"While under all circumstances a child must be regarded as an heir, it by no means follows that if a person dies without children, or the descendants of children, he dies without heirs, in the legal signification of that word."

In that case the language of the will was, "If my son die without heirs." It was held that the testator, by the use of the word "heirs," did not intend to use the word in its restricted sense, and to mean thereby heirs of the body only. The court said:

"If such had been the intent of the testator, it is reasonable to suppose that he would have used the word 'descendant,' 'children,' or 'heirs of his body,' each of which would have clearly presented such intention. The devise in fee to Daniel T. can therefore be upheld by giving to the word 'heir' its ordinary signification, and by so doing do no violence to the apparent intention of the testator, especially if we construe the contingency of the death of Daniel T. to relate to a period before the death of the testator."

In Johnson v. Brasington, 156 N. Y. 181, 50 N. E. 859, the language of the clause of the will under consideration was:

"Then, at the decease of my said son, * * * it is to be equally divided among the children or heirs of the said Stephen L. Brasington in equal shares, share and share alike."

The son died without children or descendants, but he left "heirs," and it was held that the condition of the will was satisfied.

The cases cited by the respondent's counsel, in which the word "heirs" has been held to be restricted to "issue" or "heirs of the body" are clearly distinguishable from the case at bar. In Snyder v. Snyder, 11 App. Div. 171, 42 N. Y. Supp. 613, the words of the will were, "Michael, dying without heirs." In the next sentence the words used were, "Michael, dying without issue." Because of such clause, as stated by the court, the word "heirs" was held to have the restricted meaning. The other cases cited (Bundy v. Bundy, 38 N. Y. 410, and Kiah v. Grenier, 1 Thomp. & C. 388) are considered in Johnson v. Brasington, supra, and are held not to apply where a plain intention to restrict the meaning of the word "heirs" is not indicated in the will.

When the language of a will is not ambiguous there is no room for construction, and full effect must be given to the plain and generally accepted meaning of the words used. In Ritch v. Hawxhurst, 114 N. Y. 512, 21 N. E. 1009, the court said:

"When the language of a provision of a will is plain and free from ambiguity, effect must be given to its import. When it is equivocal, the intention of the testator in the use of the language employed by him must be sought for by reference to all the provisions of the will, and to such circumstances as may properly be entitled to consideration."

—Clearly implying that when the language is not equivocal, as in the case at bar, such circumstances cannot be considered.

In Lytle v. Beveridge, 58 N. Y. 592, which was an action involving the construction of a will, the court said:

"The intent is to be gathered from the will, and not the subject of conjecture, and words which have acquired a fixed legal meaning must be intended to have been used in the sense which has been impressed upon them, unless it is apparent that they were used by the testator in a different sense."

In the case of Wadsworth v. Murray, 161 N. Y. 274, 55 N. E. 910, the court said:

"When the testator employs language that is clear, definite, and incapable of any other meaning than that which is conveyed by the words used, there is no reason for resorting to the rules of construction that are invoked in the case of ambiguous wills."

Phillips v. Davis, 92 N. Y. 199; Still v. Spear, 45 Pa. St. 170; Tebbs v. Duval, 17 Grat. 349.

In every case to which our attention has been called in which the courts have assumed to construe a clause in a will so as to give a meaning to the language employed different from that impressed upon it by the well-recognized rules of law, it was first determined that the meaning of such language was ambiguous. We venture to assert that no reported case can be found where it has been held that a devise to a known devisee may be enlarged or diminished by reference to circumstances dehors the will to ascertain the testator's intent, when the language of the will itself is not ambiguous, and is such as has acquired a well-defined and well-recognized legal meaning; and, if so, the age of the testatrix, the age of the devisees at the time of the execution of the will, and other extrinsic facts referred to in the prevailing opinion as important in determining the intent of the testatrix, may not be considered to import a meaning different from that which is unequivocally expressed by the language used.

We think the entire estate of the testatrix vested absolutely in her two great-granddaughters, Gracie and Myrtie, share and share alike, immediately upon her death, because they both survived the testatrix; but even if the devise was contingent, depending upon a death after the death of the testatrix, Gracie Cramer having died leaving no "heir or heirs," her mother, the appellant, is entitled to her distributive share of one-half of the estate devised by the will in question. We think the decree of the surrogate's court should be reversed.

LAUGHLIN, J. I dissent upon the ground that, in my opinion, the title to the real estate devised and the ownership of the personal property vested absolutely in the great-grandchildren upon the death of the testatrix.