## In re LEHRBACH.

(Supreme Court, Appellate Division, First Department.  June 17, 1910.)

WILLS (§ 547*)—ESTATE CONVEYED—TIME OF VESTING.

Where a will bequeathed to testatrix's two infant daughters equally, share and share alike all the property of which he died seised and possessed, which consisted entirely of personalty, and provided that if either of them died without issue, decedent's share should go to the survivor, the share of each infant vested upon the death of testatrix and the administration of the estate, so that where the guardians of such infants received all the property and accounted for and held it as the infants' property, the share of a legatee would not, upon her subsequent death without issue, go to the surviving legatee; the title of the deceased legatee being absolute at her death.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 547.*]

Scott and Clarke, JJ., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the account of Emma E. Lehrbach as administratrix of Elsa Sexauer, deceased.  From a decree of the Surrogate Court settling the administratrix's accounts, Lina Besserer appeals.  Reversed, and case remanded for further proceedings as directed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

T. Ellett Hodgskin, for appellant.

William F. Haemer, for respondent.

INGRAHAM, P. J.  On the 14th of July, 1896, Lina Sexauer made her last will and testament.  She then had three daughters, Lina, Emma, and Elsa.  The entire estate consisted of personal property. The will, after directing the payments of debts and funeral expenses, provided as follows:

"My eldest daughter, Lina Lehmann, having received her share of the estate coming to her from my first husband, and inasmuch as what I have to dispose of are my own earnings, and I wish to provide to the best of my ability for my two youngest children, Emma Sexauer and Elsa Sexauer, I do hereby give, devise and bequeath unto my said two youngest daughters, Emma Sexauer and Elsa Sexauer equally share and share alike all property whatsoever name, kind and nature of which I may die seized and possessed, and should either of them die without leaving issue then the share of such deceased shall go to the survivor of my two above named children."

Lina Sexauer died in 1896, and this will was then admitted to probate.  Her two youngest children were infants.  The will appointed Joseph Molitor and Otto Albrecht executors and guardians of the persons and estates of the said two daughters and legatees during their minority.  After the death of the testatrix these two persons were duly appointed testamentary guardians of the two infants.  On the 18th of December, 1899, Molitor, one of the guardians, died, and Albrecht continued to act as guardian until the death of Elsa Sexauer

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on the 3d of April, 1900, intestate and unmarried, leaving her surviving as her only heirs at law and next of kin her sisters, Lina Besserer and Emma Sexauer. Albrecht filed an account as guardian of the infants in the Surrogate's Court in May, 1905, to which Emma was a party, she having then arrived at age. In that account the guardian charged himself with all the property that came into his hands belonging to Lina Sexauer, the mother of the infants, as property in his possession as guardian of the infants. The total amount of personal property that has come into the hands of the guardians of these infants was $38,409.44, made up of deposits in various savings banks, a sum of money deposited by the testatrix in her lifetime with one Bechtel, a brewer on Staten Island; and moneys on deposit in savings banks belonging to the estate of August Sexauer, father of the two infants, who had predeceased the testatrix. That account having been presented to the surrogate as money belonging to the two infants in the hands of the guardian, a decree was entered by the surrogate on the 26th of October, 1905, which recited that the testamentary guardian, Albrecht, was chargeable with this amount of $38,409.44, and was credited with moneys paid out for claims of creditors, legal expenses, and other disbursements of the guardian, with amounts paid for the support and education of the infants, and with moneys paid out and disbursed for the care and preservation of the real estate belonging to the infants; leaving a balance of $12,587.85, of which by the decree he was directed to pay to Emma Sexauer the surviving infant the sum of $12,302, being the amount in his hands less the cost of the accounting, and he was thereupon discharged as the surviving testamentary guardian of Emma Sexauer, formerly an infant.

From this accounting it would appear that the guardians of these two infants had received from the estate of Lina Sexauer all of the property of which she died seised, and had accounted for it as the property of the infants, so that the estate of Lina Sexauer had been administered and the guardian of the two infants had reduced the estate to possession and held it as the property of the infants. Upon these infants arriving at age they would have been absolutely entitled to the property held for them by their guardian, and I think this money must be treated as if these two legatees had received from the estate of their mother the property which had been bequeathed to them by her will. There is no extraneous fact presented by this record which can affect the construction of the will, no trust was created, and the right of each of these legatees to share in the personal property left by the testatrix was determined it seems to me upon the probate of the will. There was no indication in the will that the testatrix intended to make the bequest contingent, or that the title of the legatees to their respective legacies was contingent upon survivorship as among themselves, or that anything was intended by the will except an absolute bequest which vested on the death of the testatrix and the admission of her will to probate without condition or limitation. If the estate of the testatrix had remained unadministered and undistributed, a different question would have been presented. Elsa Sexauer, one of the infants, died on the 3d of April, 1900, and her sister Emma Sex-

auer was appointed her administratrix, and this question is presented upon her accounting as such. On the accounting of the surviving guardian she received the total amount remaining in his hands of the money and property of both infants. Upon this accounting as administratrix of Elsa she presented to the court an account which she admitted receiving from the administrator of her father's estate $809.65, and from the guardian of Elsa $606.39, which she claimed was all the money for which she was accountable, refusing to account for any money that she has received from the guardian of her sister Elsa which represented what he had received as property of the testatrix, Lina Sexauer. The surrogate held that she was not accountable for any property of Lina Sexauer or for the legacy that Elsa Sexauer had received under the will of the testatrix, and that presents the only question on this appeal.

By this will the title and possession of the legacies vested at the same instant. There was no restriction upon either title or possession. Certainly if Elsa, the intestate, whose estate is now being accounted for had arrived at the age of 21 and had received from her guardian her share of the property held by the guardian for her, upon her subsequent death without issue it could hardly have been claimed that the surviving sister would have been entitled to sue her estate to recover back the property which she had received as legatee under this will. This is not a case where a trust was created and where possession was postponed until the termination of the trust, so that although the remainder vested, the right to receive the proceeds could have been divested at the death of the legatee subsequent to the vesting of the remainder, but before the period of distribution had arrived. Under the will the absolute title to this personal property must have vested somewhere. It was not in the executors, for they had accounted, and the property had been received and was held by the guardian of the legatees. All of the authorities relied on by the respondent with one exception are cases where there was either a trust or a life estate with a remainder over, and where from the will it was evident that it was the intention of the testator to postpone the actual vesting of the estate until the time of distribution, so that survivorship would depend upon the survival at distribution and not at the death of the testator. Those authorities clearly have no application to a case where a bequest of personal property became absolute upon the death of the testatrix. The title to personal property must vest somewhere, and by this will it did vest absolutely in the legatees with no provision for a subsequent divesting of the property or by which the title to the property which vested on the death of the testator could be divested in consequence of the happening of a subsequent event. The one case upon which the surrogate below relied, and upon which the respondent relies, is Matter of Cramer, 59 App. Div. 541, 69 N. Y. Supp. 299; affirmed 170 N. Y. 271, 63 N. E. 279. I cannot find that this case has ever been cited or either followed or distinguished. In the Supreme Court in 59 App. Div. 541, 69 N. Y. Supp. 299, the age of both the testatrix and the legatees were cited as being evidence of the intention

of the testatrix. It was stated that while a certain sum of money had been paid to the general guardian of the deceased great-grandchild a part of the estate had been unadministered. After disposing of a preliminary question it is stated that the troublesome question was whether Gracie, the deceased great-grandchild, did not become vested with the bequest so that it must now be apportioned according to the statute of distribution. And in determining that question the court said:

"In the present case the testatrix, with her eighty-five years and with these little girls, only nine and eleven, respectively, could not have intended to restrict the survivorship without heirs to a death prior to her own. In the natural course of events, if one of these heirs died before the testatrix, she would leave no children. In arriving at her purpose we cannot ignore this obvious fact and the further fact that they would probably outlive her."

And the court citing Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388, said that in the Washbon Case the legacy to the daughter and her aliquot portion as residuary legatee were paid over to her as absolute owner, and it was held that she became the absolute owner of the property when the estate had been distributed and paid over to the legatees. But in the discussion both in the prevailing and in the dissenting opinions of the Appellate Division the question seems to have been discussed upon the assumption that, as the property had not been absolutely distributed, the survivorship provided for in the will was the survivorship before the formal absolute distribution of the property. When the case was in the Court of Appeals (170 N. Y. 271, 63 N. E. 279), Judge Bartlett who delivered the opinion of the court approved the prevailing opinion of the court below, and all through the opinion seems to have treated the question as one by which the question of survivorship was to be determined, not upon the death of the testatrix, but upon the time of distribution. All the cases cited in the opinion are cases in which there had been either a life estate or a trust created in which from the language used or the surrounding circumstances it was intended that the survivorship was postponed until the actual distribution. Under the Cramer Case I think we should hold that the testatrix intended the time of survivorship to apply to the time of distribution, but I do not think it is a binding authority upon the proposition that after the estate had been absolutely distributed and had come into the possession of the legatees, so that the legatees could have spent it or disposed of it in any way, the death of one of the legatees divested the title and entitled the survivor to recover from the estate of the deceased legatee the property that had been received as an absolute legacy. In the case of March v. March, 186 N. Y. 99, 78 N. E. 704, 8 L. R. A. (N. S.) 180, the will gave to the executors and trustees a power of sale, directed the trustees to invest one-third of his property during the life of his wife and pay her the rents, incomes, and profits thereof; to divide the remaining two-thirds into six equal parts or shares; and to convey, pay, and assign one of such shares to each of his sons absolutely, and to hold one share for each of his daughters during their lives; and then, providing that upon the death of any of his children before the conveyance and payment to him of the share of his estate his executors convey, pay and assign the share of

the one so dying to his or her issue and that if he or she should leave no issue then to his surviving children. One son died after the death of the testator without issue but who had received during his lifetime his share of the personal estate. It was assumed that under this will Frank having received his share of the personal estate, his estate was entitled to hold it and that the provision of survivorship did not apply, the court saying:

"The personal estate, as we have seen, had been administered by the executors, the debts paid, and the amount due Frank paid over to him during his lifetime. We have, therefore, only to consider the real estate."

And it was held that as the real estate, it not having then been sold and the time of distribution of the proceeds not having arrived, the proceeds went under the will to the issue of Frank and not to Frank's representatives. The court said:

"The executors and trustees have acted in good faith, have sold the real estate, and converted it into money as soon as it was possible or proper for them to do so, and have fully performed their duty in that regard, as has been found and conceded in this case. If they had not performed their duty in that regard, Frank, during his lifetime, had his remedy to enforce such performance. The question in this case is, When did the fund become due and payable to Frank? When could he have maintained an action against the trustees to recover his share of the proceeds of the real estate? Under the will they were required to sell at such times and on such terms as was proper. The fund derived from the sale was then to be distributed in the manner specified in the will. It was then that Frank's share became due and payable; then he was entitled to have it in possession; then he could have maintained an action to recover it. But when that time arrived, as we have seen, he had died, and under the terms of the will his right thereto passed to his only surviving child."

If the construction adopted in this case is correct, then the executors of Frank could have been compelled to refund the personal property that he had received, which was not suggested, but it was assumed all through the opinion that when Frank actually received the property as a legatee under the will he then became entitled to it absolutely. Discussing the rule the court further said:

"The same rule is applied where the will is silent as to the time of payment and the legacy is immediate. Thus, where a legacy is not expressly payable in the future, and the will provides a gift in case of the legatee's death before receiving his share of a residue, or before the 'division' of the estate, and the legatee survives for one year after the testator, which period is allowed by law for the settlement of the estate, the legacy is indefeasibly vested, though, if he die during the year, the gift over takes effect."

And the conclusion was:

"I consequently conclude that Frank took a contingent estate, which would become vested absolutely in case he lived until he was entitled to it in possession, or until it became due and payable to him, subject to be divested in case of his death before that time, and he having so died, his share passed over to his daughter under the will of his father."

My conclusion, therefore, is that as the personal estate of the testatrix had been actually administered, and the amount distributed, the title of the legatee became absolute, and should be distributed according to the statute of distributions.

It follows from this that the decree must be reversed and the case transmitted to the surrogate to proceed in accordance with the views expressed, with costs to the appellant payable out of the estate.

LAUGHLIN and MILLER, JJ., concur.

SCOTT, J. (dissenting). The only debatable question raised by the appeal is as to proper construction to be given to the second paragraph of the will of Lina Sexauer, deceased. That clause reads as follows:

"Second: My eldest daughter, Lina Lehmann, having received her share of the estate coming to her from my first husband, and inasmuch as what I have to dispose of are my own earnings, and I wish to provide to the best of my ability for my two youngest children, Emma Sexauer and Elsa Sexauer, I do hereby give, devise and bequeath unto my said two youngest daughters, Emma Sexauer and Elsa Sexauer equally share and share alike all property of whatsoever name, kind and nature of which I may die seized and possessed, and should either of them die without leaving issue then the share of such deceased shall go to the survivor of my said two above named children."

The testatrix died in August, 1896, being survived by her daughters Emma and Elsa Sexauer, both then infants and unmarried. Elsa Sexauer, one of the said infants, died May 3, 1900, intestate, unmarried, and still an infant. The question is whether upon her death the share of her mother's estate, bequeathed to her by the clause above quoted, went to her surviving sister Emma under the mother's will, or went to the next of kin of said Elsa.

The clause under consideration does not differ in any material or essential particular from that which was construed by the Court of Appeals in the Matter of Cramer, 170 N. Y. 271, 63 N. E. 279, and which read as follows:

"After the payment of all my just debts and funeral expenses I give and bequeath to my two great-grandchildren Gracie and Myrtie Cramer (daughters of Leonard Cramer deceased) all my personal property, including my household furniture, equally share and share alike. But in case of the death of either of said great-grandchildren Gracie or Myrtie without heir or heirs, I direct that such share of personal property shall go to the survivor of them."

The Court of Appeals construed the words "heir or heirs," as meaning "issue," which is the word used in the present case, and held that upon the death of Gracie Cramer, after the death of the testatrix, the survivor, Myrtie, took the entire estate, which upon the death of the testatrix had vested in both Gracie and Myrtie contingently, subject to being divested as to either, by her death subsequent to that of the testatrix.

The cases are so entirely on all fours that there is no room for distinction, and no course left open except to follow the precedent thus established, nor would it serve any useful purpose to critically discuss the authorities which preceded the Cramer Case, which, as the appellant insists, would sustain a different rule. It is sufficient that the rule in that case has been established by the Court of Appeals, and has not been qualified or departed from.

The decree should be affirmed, with costs to the respondent.

CLARKE, J., concurs.